[No. B046436. Second Dist., Div. Five. Aug. 10, 1992.]

GERALD CLINTON KUHNS et al., Plaintiffs and Respondents, v. THE STATE OF CALIFORNIA, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III and VII.

**COUNSEL**

Joseph A. Montoya, Anthony J. Ruffolo, Robert W. Vidor, Larry R. Danielson, Ira W. Holroyd and Robert B. Schoenburg for Defendant and Appellant.

Cornelius P. Bahan and Thomas Kallay for Plaintiffs and Respondents.

**OPINION**

ASHBY, J.—In this personal injury action arising from a highway accident, defendant and appellant State of California appeals from a judgment on a jury verdict in favor of plaintiffs and respondents Gerald and Gina Kuhns.

On June 13, 1984, the driver (codefendant Robert Covell) of a truck and trailer, which carried a large load of Kraft mayonnaise bottles, lost control

while rounding a curve on the transition bridge from westbound State Highway 91 to southbound Interstate Highway 605 (I-605). When the trailer tipped over and struck a bridge abutment, the trailer was sliced open, expelling its load of mayonnaise jars onto the northbound I-605 below. Part of the load struck the vehicle of Gerald Kuhns, travelling north on I-605, causing severe injuries rendering him a quadraplegic. The jury found the accident was caused by the concurrent negligence of Covell and the dangerous condition of the highway, and apportioned 50 percent liability to each. The jury found total damages of $13,220,000 as to Gerald Kuhns and $1,980,000 as to Gina Kuhns for loss of consortium.

Prior to trial, after numerous discovery hearings and discovery orders, and the previous imposition of monetary sanctions, the court ruled that appellant State of California willfully refused to obey court orders compelling discovery.[1] The court imposed an issue sanction (Code Civ. Proc., §§ 2023, subd. (b)(2), 2031, subd. (m)) for such disobedience: (1) It was deemed admitted that a dangerous condition of government property existed on the accident site and that appellant had previous knowledge of such dangerous condition (Gov. Code, § 835, subd. (b)), and (2) appellant was precluded from raising the defense of design immunity. (Gov. Code, § 830.6.)

Almost all of appellant's issues on appeal relate to the imposition or the effects of the discovery sanction.

I

BACKGROUND

*Relevance of Documents*

At the entrance to the transition curve a warning sign displayed the number 30 and the silhouette of a truck trailer tipping, indicating a danger of tipping over at speeds in excess of 30 miles per hour. The driver of the truck trailer nevertheless entered the transition at speeds estimated between 35 and 53 miles per hour. Attempting to slow down by downshifting from ninth gear to eighth, the driver missed eighth gear, and the trailer began to tip over. Between the guardrail of the freeway and the bridge rail of the transition curve was a bridge abutment, a vertical pillar which supports the bridge through pilings extending into the ground below the bridge. When the side of the tipping trailer struck the squared or rough edges of the abutment, the abutment sliced the trailer open ("like a can opener," in the words of counsel) and the contents exploded out onto the I-605 below.

---

[1] Judge Walker imposed the pretrial discovery sanctions. Judge Krieger subsequently conducted the trial.

In violation of court orders compelling discovery, appellant failed and refused to produce two types of documents relevant to the dangerous condition of the intersection and appellant's prior notice thereof. These were (1) certain Department of Transportation (Caltrans) policy letters, and (2) "ball bank studies." During depositions of certain Caltrans employees, respondents learned of the existence of Caltrans policy letters which called for concrete bridge abutments to be altered so as to eliminate edges on which a vehicle might impale itself; these letters were repeatedly requested but not provided. Ball bank studies were a means of determining the comfortable safe speed for a vehicle to negotiate a curve; these studies also were repeatedly requested and not provided.

These documents could have shown that the condition of the transition road was dangerous and that appellant had prior notice of the dangerous condition.

### Discovery Orders

Appellant does not dispute that these documents were repeatedly ordered to be produced and were not produced. Therefore, the procedural history of the discovery orders is briefly stated, with specific facts discussed, *post*, in relation to appellant's specific contentions.

In earlier discovery in 1986, respondents[2] requested production of speed studies and documents relating to guardrail design. In 1987 respondents learned specifically of the existence of policy letters and ball bank studies and included these in requests for orders compelling discovery and for sanctions.

In December 1987, the court denied respondents' motion to strike appellant's answer but imposed monetary sanctions of more than $40,000 for appellant's failure to comply with earlier discovery orders, and ordered appellant to produce within 10 days all documents listed in respondents' second supplemental declaration filed August 31, 1987.

In May 1988, respondents moved to strike appellant's answer and enter a default judgment on the ground appellant still had not obeyed the prior orders of the court.

---

[2]Kraft Foods Company was originally a defendant and a cross-complainant against appellant State. Kraft entered a sliding scale settlement agreement with respondents under which Kraft guaranteed respondents $6 million, Kraft would be reimbursed from respondents' recovery, if any, against appellant, and Kraft would cooperate with respondents. Thus, although Kraft did not participate as a defendant or cross-complainant at trial, Kraft did seek discovery. Some of the discovery motions were by Kraft, others were by respondents Kuhns, and others were joint. We refer to the motions collectively as respondents' motions, because the distinction between Kraft and respondents is unimportant to most of appellant's discovery contentions.

In October 1988, the court found appellant had willfully refused to obey the December 1987 discovery order. The court ordered that unless appellant produced the documents the court would enter the issue preclusion sanction which was ultimately entered in this case. In December 1988, respondents moved to impose the conditional orders on the ground appellant had not produced the documents. In January 1989, the court made another conditional order giving appellant until February 1, 1989 to comply. This order listed numerous items specifically, including the policy letters and ball bank studies.

After appellant failed to produce these documents, the court on March 30, 1989, filed its order imposing the issue preclusion sanctions.

## II

### SUMMARY

We affirm. In the unpublished portions of this opinion (pts. III and VII), we reject appellant's miscellaneous objections to the imposition of sanctions and appellant's unrelated contention concerning impeachment of expert witnesses at trial. In the published portions of this opinion we hold (pt. IV) the issue preclusion sanction was not excessively broad or harsh; (pt. V) the trial judge properly precluded, as intertwined with the discovery sanction, appellant's proposed defense under Government Code section 835.4, subdivision (b); and (pt. VI) the trial judge did not err in instructing the jury, in accordance with the discovery sanction, to assume the accident site constituted a dangerous condition.

## III

### DISCOVERY CONTENTIONS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV

### SEVERITY OF SANCTION

Appellant contends the discovery sanction deeming the accident site to be a dangerous condition of which appellant had notice was unduly harsh and was disproportionate to appellant's discovery abuse or respondents' need for the requested evidence. We find no merit to this contention.

*See footnote, *ante*, page 982.

Appellant's disobedience of the court's discovery order was an abuse of discovery (Code Civ. Proc., § 2023, subd. (a)(7)) for which the court was authorized to impose sanctions delineated in section 2023, subdivision (b).[6] Section 2023, subdivision (b) permits (1) a monetary sanction, (2) an issue sanction, (3) an evidence sanction, (4) a terminating sanction or (5) a contempt sanction. (See generally *Ruvalcaba* v. *Government Employees Ins. Co.* (1990) 222 Cal.App.3d 1579, 1581-1583 [272 Cal.Rptr. 541].)[7]

Here the trial court imposed an issue sanction under section 2023, subdivision (b)(2) which provides, "[t]he court may impose an issue sanction ordering that designated facts shall be taken as established in the action in accordance with the claim of the party adversely affected by the misuse of the discovery process. The court may also impose an issue sanction by an order prohibiting any party engaging in the misuse of the discovery process from supporting or opposing designated claims or defenses."

█ In choosing among its various options for imposing a discovery sanction, a trial court exercises discretion, subject to reversal only for manifest abuse exceeding the bounds of reason. (*Sauer* v. *Superior Court* (1987) 195 Cal.App.3d 213, 228, 230-231 [240 Cal.Rptr. 489].) █ Appellant contends the sanction imposed in this case was an abuse of discretion on the ground it was excessive in relation to respondents' legitimate needs for discovery and placed respondents in a better position than if the evidence had been obtained and had been completely favorable to respondents. (E.g., *Caryl Richards, Inc.* v. *Superior Court, supra,* 188 Cal.App.2d at p. 305; *Puritan Ins. Co.* v. *Superior Court* (1985) 171 Cal.App.3d 877, 886-887 [217 Cal.Rptr. 602].) We disagree.

With regard to policy letters, appellant contends that two obsolete policy letters were provided, and these should have been sufficient to serve respondents' interests. This argument is meritless because the two policy letters, both written in 1967, were expired by their own terms. They discussed the

---

[6]The sanctions listed in section 2023, subdivision (b) are applicable "[t]o the extent authorized by the section governing any particular discovery method . . . ." The particular discovery method involved in this case was an order compelling production and inspection of documents. (Code Civ. Proc., § 2031.) Section 2031, subdivision (m) provides "[i]f a party . . . fails to obey an order compelling inspection, the court may make those orders that are just, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction under Section 2023. In lieu of or in addition to that sanction, the court may impose a monetary sanction under Section 2023."

[7]Prior to the Civil Discovery Act of 1986, sanctions were described in former Code of Civil Procedure section 2034, subdivision (b). (See *Caryl Richards, Inc.* v. *Superior Court* (1961) 188 Cal.App.2d 300, 303 [10 Cal.Rptr. 377]; State Bar/Judicial Council Joint Com. on Discovery, Proposed Cal. Civil Discovery Act of 1986, rptr's. notes to § 2023, quoted in 3 Hogan, Modern Cal. Discovery (4th ed. 1988) appen. D, p. 195.)

desirability of placing guardrails around fixed objects such as bridge abutments. When written, these policy letters were limited to new or current construction and did not require retroactive modification.

During depositions of appellant's engineers, respondents learned of the existence of subsequent, far more explicit, policy letters, which allegedly directed that existing bridge abutments be modified and smoothed or leveled to avoid vehicles becoming snagged. The subsequent policy letters were not provided. Had they been provided, and had they proved completely favorable as likely indicated, they would have established that the bridge abutment was a dangerous condition and that appellant was on notice the dangerous condition needed correction.

With respect to ball bank studies, appellant contends respondents could have conducted their own postaccident ball bank study and acquired evidence of the comfortable safe speed. This would have been sufficient, appellant asserts, because if the elevation of the highway did not change, ball bank studies would yield the same result no matter when conducted. Appellant offered no expert opinion to support this assertion; it was merely argument by appellant's counsel. In any event, a postaccident ball bank study would be of no help in proving that appellant had *notice* of the safe speed from appellant's own preaccident ball bank studies. The failure of discovery deprived respondents of the ability to show what appellant knew about the safe speed of the intersection and when appellant knew it.

Appellant's having failed to produce information relevant to respondents' claim of the dangerous condition of the property and appellant's notice thereof, it was appropriate for the court to impose an issue sanction deeming those matters admitted. (See *Sauer* v. *Superior Court, supra*, 195 Cal.App.3d at pp. 228-229 [plaintiff's failure to produce information relevant to his economic loss justified sanction deeming that plaintiff suffered no economic loss from defendant's conduct].) Appellant misplaces reliance upon *Caryl Richards, Inc.* v. *Superior Court, supra*, 188 Cal.App.2d 300, which actually tends to support the trial court's order. In *Caryl Richards* the plaintiff suffered injury to her eyes, allegedly caused by hair spray manufactured by defendant. When the defendant refused to disclose the chemical composition of its hair spray, the trial court sanctioned the defendant by striking its answer and entering a default. The appellate court vacated that ruling as excessive because the default sanction relieved the plaintiff of the burden of establishing the other elements of plaintiff's case and deprived the defendant of other defenses. The appellate court stated, however, that the purposes of discovery and the interest of the plaintiff would have been sufficiently served by a sanction order establishing that the defendant's product was

harmful to the human eye. (*Id.* at pp. 302, 305.) In the instant case the trial court rejected a terminating sanction and imposed a limited issue sanction similar to the type approved by the *Caryl Richards* opinion.

At no time has appellant suggested alternative wording to more narrowly define the issues to be precluded as a result of discovery abuse. The issue sanction as worded did not exceed the bounds of the trial court's discretion. (*Sauer* v. *Superior Court, supra,* 195 Cal.App.3d at p. 231; see *Karz* v. *Karl* (1982) 137 Cal.App.3d 637, 651 [187 Cal.Rptr. 183].)

V

REASONABLE ACTION TO WARN

■ Prior to trial appellant moved to be allowed to present a defense under Government Code section 835.4, subdivision (b).[8] Appellant urged to the trial judge that the intersection's yellow warning sign with the number 30 and silhouette of a truck trailer tipping over constituted reasonable action to warn of the dangerous condition, and that such defense was not precluded to appellant by the discovery sanction. The trial judge precluded this defense on the ground that steps to warn against the dangerous condition were necessarily intertwined with the circumstances establishing the dangerous condition and were therefore precluded by the discovery sanction.[9] The court subsequently denied appellant's two requested instructions that a public entity is not liable for injuries caused by a dangerous condition if its failure to correct the condition was not unreasonable or it took reasonable actions to protect against the risk of injury created by the condition.

The trial court reasonably held appellant's proposed defense under Government Code section 835.4, subdivision (b) was so interwoven with the issues in the discovery sanction as to be precluded. Under that section, "[t]he

[8]Government Code section 835.4, subdivision (b) states, "A public entity is not liable under subdivision (b) of Section 835 for injury caused by a dangerous condition of its property if the public entity establishes that the action it took to protect against the risk of injury created by the condition or its failure to take such action was reasonable. The reasonableness of the action or inaction of the public entity shall be determined by taking into consideration the time and opportunity it had to take action and by weighing the probability and gravity of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of protecting against the risk of such injury."

Government Code section 830, subdivision (b) defines "[p]rotect against" to include warning of a dangerous condition.

[9]Evidence of the warning sign was admitted but only to show the driver's negligence. Appellant argued to the jury that in light of the driver's speeding in excess of the warning, the dangerous condition of the property was not a substantial factor in causing respondents' injuries.

reasonableness of the action or inaction of the public entity shall be determined by taking into consideration the *time and opportunity* it had to take action and by weighing the *probability and gravity* of potential injury to persons and property foreseeably exposed to the risk of injury against the practicability and cost of protecting against the risk of such injury." (Italics added.) Appellant's failure to comply with discovery interfered with respondents' ability to show how long appellant had known about the dangerous condition. It also interfered with respondents' ability to show the gravity of danger; the refused discovery involved both the safe speed for the curve and the physical features of the bridge abutment; greater warning steps might be required for that combination of dangers than for either danger alone.

When invited for an offer of proof of its reasonableness defense, appellant relied exclusively on the placement of the warning sign at the entrance to the transition curve.[10] As the trial court pointed out in denying appellant's motion for new trial, appellant's failure to produce ball bank studies interfered with respondents' ability to prove what appellant knew, and for how long, about the comfortable safe speed. Furthermore, a potential argument for respondents was that if freeway traffic, especially truck trailers, must reduce speed from 55 miles per hour to 30, additional warnings in advance of the intersection were required. (E.g., *Vinson v. Ham Bros. Constr., Inc.* (1970) 7 Cal.App.3d 990, 996 [87 Cal.Rptr. 12]; *De La Rosa v. City of San Bernardino* (1971) 16 Cal.App.3d 739, 749 [94 Cal.Rptr. 175].) In reliance upon the discovery sanction, respondents did not explore that issue with appellant's expert witness in deposition or at trial, and thus respondents would have been prejudiced by appellant's presentation of a reasonableness defense at trial. (See *Sauer v. Superior Court, supra,* 195 Cal.App.3d at p. 230.)

VI

DEFINING DANGEROUS CONDITION

The exact wording of the pretrial discovery sanction was, "[f]or the purposes of this trial it is deemed admitted: that a dangerous condition existed on the site, and that the State had previous knowledge of said dangerous condition. The State is precluded from presenting evidence on these issues."

During jury voir dire and opening statements to the jury, the court informed the jurors there had been a legal conclusion for the purpose of this

---

[10]Appellant did not, for example, offer to prove that cost or impracticability of corrective action outweighed the risk.

case that the accident site constituted a dangerous condition and that the State knew it was in a dangerous condition.

These two elements having been deemed admitted, the court instructed the jury at trial (by modifying BAJI Nos. 2.60 and 11.53) that respondents had the burden to prove "the following issues: 1. That the injuries of which plaintiffs complain were caused by the dangerous condition; and 2. That the injuries of which plaintiffs complain occurred in a way which was reasonably foreseeable as a consequence of the dangerous condition of the property." By special verdict the jury so found.[11]

Prior to trial, and again at the close of respondents' case, appellant requested the trial court to define for the jury specifically what features of the accident site were deemed a dangerous condition. The trial court denied these motions. This issue arose again when during jury deliberations the jury specifically asked, " 'What is the State agreement for the definition of dangerous condition? We need to know is the road or the abutment the dangerous condition?' " After consultation with counsel the court answered the jury, " 'There was no agreement. Another judge of this court deemed that a dangerous condition existed at the time of the accident. Therefor, you are to assume that the accident site constituted a dangerous condition on June 13, 1984.' " When the court gave its answer to the jury's question, the foreperson commented, "That doesn't help us." The court instructed the jury to continue deliberations.

■ The trial court did not err in declining to specify what features constituted the dangerous condition of the property. The pretrial discovery sanction order used the phrase, "A dangerous condition existed on the site." It is difficult to fault the trial judge for using the same language ("[Y]ou are to assume that the accident site constituted a dangerous condition") in answer to the jury's question. The answer accurately reflected what was deemed admitted by the pretrial order. It was proper for the court to advise

---

[11]During closing argument to the jury respondents' counsel explained: "[I]t was the starting point in this case that the intersection and the transition road that is the subject matter of this portion of the trial has been declared or deemed to be in a dangerous condition at the time of this accident. [¶] You may be wondering why that particular aspect of the case is not dealt with by the experts in the course of this trial. It is because it has already been deemed admitted. That was essentially the starting point before you were even selected as a jury in this case."

Appellant's counsel told the jury, "His Honor has already instructed you that because the fact is that it had been deemed to have been admitted that this transition road had been in a dangerous condition on that date . . . and that the State knew that, [respondents] must show that was the cause of the accident."

the jurors of issues removed from their determination because they were deemed admitted. (See *Moore* v. *Pacific Coast Steel Co.* (1915) 171 Cal. 489, 491 [153 P. 912]; *People* ex rel. *Dept. of Public Works* v. *Wasserman* (1966) 240 Cal.App.2d 716, 740 [50 Cal.Rptr. 95].)

Appellant contends that without a concrete definition of what was dangerous about the site, the jury could only speculate as to causation and foreseeability, the only two liability issues left to the jury. Although we can appreciate the jury's practical difficulty, the trial court did not err. The trial judge was not required to convert the deemed admission to narrower specific facts. Since those issues were deemed admitted, respondents were not required to produce evidence on them at trial. The court did not err in requiring the jurors to decide the case based on the evidence then available to them.

Appellant misplaces reliance on *Paverud* v. *Niagara Machine & Tool Works* (1987) 189 Cal.App.3d 858, 863 [234 Cal.Rptr. 585] for the proposition that the court failed to instruct the jury on a material issue. That case involved a complete failure to instruct the jury on the law of superseding cause, which was the only material legal issue in the case. Here the trial court instructed the jury on the *legal* issues, and appellant erroneously complains the court should have given more *factual* guidance. (*Moore* v. *Pacific Coast Steel Co.*, *supra*.) Appellant was not deprived of instructions essential to the jury's determination. The court told the jury what had been deemed admitted and submitted to the jury the remaining issues of causation and foreseeability. Appellant was able to present a vigorous defense within the limitations of the discovery sanction and the instructions; based on substantial evidence produced at trial, appellant argued to the jury, albeit unsuccessfully, that the accident was not caused by the condition of the highway but by improper loading of the trailer and the driver's excessive speed or inattention, that the trailer would have ripped open and emptied its contents regardless where it struck, and that the accident was unique and unforeseeable.

## VII

### TRIAL ISSUE*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 982.

## VIII

### CONCLUSION

The judgment is affirmed.

Turner, P. J., and Grignon, J., concurred.

A petition for a rehearing was denied August 27, 1992, and appellant's petition for review by the Supreme Court was denied October 29, 1992.