[No. B166116. Second Dist., Div. Six. Jan. 22, 2004.]

In re Marriage of JACOB and ASHA CHAKKO.

JACOB CHAKKO, Appellant, v.
ASHA CHAKKO et al., Respondents.

---

## COUNSEL

Taylor, McCord & Prayer, Patrick G. Cherry; Law Offices of Donna C. Santo, Donna C. Santo and Patricia H. Lamas for Appellant.

Daniel E. Lungren, Attorney General, James M. Humes, Assistant Attorney General, Thomas R. Yanger and Barbara L. Sheldon, Deputy Attorneys General, for Respondent Ventura County Child Support Services.

No appearance by Respondent Asha Chekko.

---

## OPINION

**YEGAN, J.**— ██ The first obligation of a parent is to support his or her children. (*In re Marriage of Hyon & Kirschner* (1991) 231 Cal.App.3d 449, 452 [282 Cal.Rptr. 408].) This rule is apparently lost on appellant, who sees the instant child support action only as a contest with his former wife. In this situation, a spouse should set aside his or her animosity for a former spouse and focus instead on the financial well-being of his or her children.

██ Jacob Chakko (Father) appeals from the trial court's postjudgment child support "issue sanction" order declaring that his income is $40,000 per month and precluding him from offering any evidence to the contrary. The trial court entered this order because Father failed to comply with an order compelling him to provide discovery of his financial records to his ex-wife, Asha Chakko (Mother) and the Ventura County District Attorney (District Attorney). Father contends the order is punitive, an abuse of discretion, and not supported by substantial evidence. He is partially correct. The order is punitive because Father has interfered with the truth-seeking function of the trial court by refusing to cooperate in discovery. When the trial court has either expressly or impliedly so found, it may, in the exercise of its sound discretion, do justice between the parties by making a discovery "issue sanction" order. We affirm.

### Facts and Procedural History

Father and Mother were married in December 1976 and separated in February 1990. The eldest of their two daughters turned 18 in 1998. This appeal concerns the payment of child support arrearages for their younger daughter, who turned 18 in September 2003. In October 2000, Father filed a

motion to modify the custody order to grant him primary physical custody of the younger daughter. The District Attorney intervened, requesting that guideline child support be ordered and made payable through the District Attorney's office.

At one of the several hearings on the child support issue conducted by the trial court, the District Attorney introduced into evidence a loan application that Father used to refinance the mortgage on his house. This document states that Father's income is $40,000 per month and that his house is valued at $2,500,000. Father did not object to its introduction into evidence. He did, however, testify that the application was completed by a broker and that, although he signed a large stack of documents in connection with the refinancing, he believed the signature on the application was not genuine.

The trial court ordered the parties to exchange income and expense declarations, their most recent federal and state tax returns, and all other relevant financial documents. Father did not comply. He refused to answer the interrogatories propounded to him and failed to produce the documents requested by the District Attorney, including the income tax returns of the corporations he controls. The trial court granted the District Attorney's motion to compel, ordering Father to produce the financial records requested. Father disobeyed the order.

The District Attorney filed a motion for sanctions, requesting an issue sanction declaring Father's income to be "$40,000 per month from January 1, 2000 through the present." After further hearing, the trial court imposed an issue sanction order for the years 2000 and 2001, but declined to impose a sanction for the year 2002. As a result, Father was ordered to pay child support of $3936 per month for the year 2000 and $3958 per month for the year 2001.

Father sought reconsideration, insisting that he did not earn $40,000 per month and that his prior counsel was solely responsible for any failure to produce documents or comply with other discovery requests. He claimed that he "never did understand what further documents I was to produce until I hired my present counsel, who explained the matter to me."

*Evidence of Father's Income*

Father is "employed" by J.C. Industries, Inc., a corporation he owns with his current wife. The couple also own entities called Nightsky LLC and Enigami, Inc. In an October 2000 income and expense declaration, Father declared that J.C. Industries pays him a salary of $5,291 per month. It also pays his monthly car payment of $525. In addition, his current wife receives

a "dividend" of $8,900 each month. The corporation also pays their home mortgage. All tolled, each month J.C. Industries pays at least $13,000 per month of Father's personal expenses.

In July 2001, Father refinanced the mortgage on his house. The loan application stated that Father's monthly income was $40,000 and estimated the present market value of the house at $2,500,000. Father testified that a broker completed the loan application for him. In connection with the refinancing, Father signed a stack of documents four or five inches thick. He claims, however, that he did not sign the loan application. According to Father, the signature on that document is not genuine. Before the refinancing, the mortgage payment on the house was about $12,922 per month and was paid by J.C. Industries. After the refinancing, his monthly payment was reduced to $8,685, also paid by the corporation.

Julie Gaiser Levy, the loan officer responsible for the refinancing, declared that she obtained for Father a " 'stated income' loan. A 'stated income' loan is a loan where we use an average of 12 months deposits to verify income rather than paystubs or tax returns. In the case of Mr. Chakko we supplied [the lender] with 12 months of business bank statements for J.C. Industries and Enigami, Inc. as the basis by which to calculate and verify his income, rather than personal bank statement[.]" Levy confirmed that, in preparing the loan application, she "used an average of 12 months deposits for Mr. Chakko to calculate his income of $40,000 per month . . . ." She declared that Father signed the loan documents, including the application containing the income figure.

### Standard of Review

We review the trial court's ruling on a discovery sanction under the deferential abuse of discretion standard. (*Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1545 [51 Cal.Rptr.2d 311].) We will affirm the sanction order unless it is arbitrary, capricious, whimsical, or demonstrates a " 'manifest abuse exceeding the bounds of reason. . . .' " (*Juarez v. Boy Scouts of America, Inc.* (2000) 81 Cal.App.4th 377, 388 [97 Cal.Rptr.2d 12] [discovery sanction], quoting *Kuhns v. State of California* (1992) 8 Cal.App.4th 982, 988 [10 Cal.Rptr.2d 773] [same]; see also *Estate of Gilkison* (1998) 65 Cal.App.4th 1443 [77 Cal.Rptr.2d 463].)

### No Abuse of Discretion

First, Father contends that the trial court abused its discretion because there is no substantial evidence that he earns $40,000 per month. He argues that the sole evidence of his income, the loan application, does not constitute

substantial evidence because it was completed by a third party, contains only an estimate of his actual earnings, and bears a forged signature. This argument is premised on an impermissible reweighing of the evidence. The loan application, standing alone, constitutes substantial evidence that Father's income was $40,000 per month. (E.g., *In re Marriage of Martin* (1991) 229 Cal.App.3d 1196, 1200 [280 Cal.Rptr. 565].) A spouse who is the owner of a successful business and who has control of his or her income can structure income and the payment of expenses to depress income. This is not fair if it inures to the detriment of children. Here, the trial court drew the inference that Father's structuring of income and expenses was an attempt to minimize child support obligations. (See *In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 529 [70 Cal.Rptr.2d 488].)

■ Second, Father also argues that even if the loan application is substantial evidence, the issue sanction was an abuse of discretion because it placed him in a worse position than he would have been in had the documents been timely produced and interpreted in favor of Mother. In exercising its broad discretion to sanction discovery abuses, the trial court may impose any sanction authorized by statute that will enable the party seeking discovery to obtain the objects of the discovery sought. (*Vallbona v. Springer, supra,* 43 Cal.App.4th 1525, 1545.) "A discovery sanction may not place the party seeking discovery in a better position than it would have been in if the desired discovery had been provided and had been favorable." (*Rail Services of America v. State Comp. Ins. Fund* (2003) 110 Cal.App.4th 323, 332 [1 Cal.Rptr.3d 700]; see also *Kuhns v. State of California, supra,* 8 Cal.App.4th 982, 988.)

Code of Civil Procedure section 2023, subdivision (b)(2) permits the trial court to impose an issue sanction "ordering that designated facts shall be taken as established in the action . . . ." The District Attorney attempted to obtain through discovery the tax returns and other financial records required to determine Father's income, a necessary step in determining the amount of child support he was required to pay. For eight months Father refused to produce his most basic and readily available records: tax returns, general ledgers, profit and loss statements, check registers and the like. During this time, the best information available concerning his actual income was the loan application Father used to refinance the mortgage on his $2,500,000 house. According to his mortgage broker, the application was prepared using the very documents that Father refused to produce in discovery. The trial court's "issue sanction" directly addressed the discovery violation because it provided the district attorney with the very information that Father refused to provide voluntarily: evidence of his income or access to funds tantamount thereto.

Father has not demonstrated that the sanction was excessive because it "placed respondents in a better position than if the evidence had been obtained and had been completely favorable to respondents." (*Kuhns v. State of California, supra,* 8 Cal.App.4th at p. 988.) The financial records that Father refused to produce were likely to have supported the income stated in his loan application because his loan broker testified that she completed the application using at least some of those same documents. Father cannot have it both ways. If these records were good enough to obtain financing for a $2,500,000 house, they are good enough to support the issue sanction order concerning child support.

## Conclusion

Father fails to appreciate the rules on appeal concerning substantial evidence and abuse of discretion. He fails to understand that the trial court did not credit his testimony. Those who interfere with the truth-seeking function of the trial court strike at the very heart of the justice system. The courts will not tolerate such interference.

The "issue sanction" order is affirmed. Costs to respondent.

Gilbert, P. J., and Perren, J., concurred.