Filed 4/8/14  Fletcher v. HPN Holdings CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EDWARD FLETCHER,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>HPN HOLDINGS et al.,<br><br>    Defendants and Appellants. | F064864<br><br>(Super. Ct. No. 10CECG02135)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Jeffrey Y. Hamilton, Jr., Judge.

Penner, Bradley & Simonian, Peter Sean Bradley for Defendants and Appellants.

Anderson Law Offices, Bonnie J. Anderson and Marlene A. Hubbell for Plaintiff and Respondent.

-ooOoo-

This appeal is from an order awarding approximately $6,000 in discovery sanctions.  We affirm.

### *FACTS AND PROCEDURAL HISTORY*

Plaintiff Edward Fletcher filed suit against defendants HPN Holdings, Inc., Street Strider International LLC, Garrett B. Watkins, and David W. Kraus in June 2010.

According to the complaint, Street Strider International is a company that manufactures a "three-wheel mobile elliptical exercise bicycle" called the Street Strider, and HPN Holdings is a company that sells this product. Watkins was alleged to be the CEO and Kraus the president of both companies; the companies were claimed to be alter egos of the two men. At some point, another entity, Streetstrider Enterprises, Inc., was added as a defendant. Fletcher alleged that he entered into a contract with defendants under which he arranged for defendants to be loaned $500,000. In return, he received an exclusive right to sell the Street Strider and a share of profits. Fletcher also purchased shares in HPN for $100,000. Defendants allegedly failed to repay the loan as required by the contract, leaving Fletcher liable to the lender. The complaint alleged causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud and misrepresentation, money had and received, breach of fiduciary duty, accounting, conversion, trespass to chattels, a violation of Business and Professions Code section 17500 et seq., and a violation of Business and Professions Code section 17200 et seq. It prayed for declaratory relief, an injunction to prevent defendants from selling products without first repaying the loan, damages in excess of $1 million, civil penalties, and other remedies.

Fletcher served deposition notices for defendants' corporate representatives or "Persons Most Knowledgeable" on August 16, 2011. The notices set the depositions for September 29 and 30, 2011. Each notice listed 11 subjects about which the corporate representatives would be deposed and requested that defendants produce documents in 47 categories. The depositions did not take place as scheduled, and in October 2011, following an unsuccessful mediation and proceedings to resolve other discovery disputes, Fletcher renoticed the depositions for dates in November 2011.[1] One of the new notices

[1]So far as the documents contained in the record show, the notices served in August 2011 request persons most knowledgeable for HPN Holdings and Street Strider International, but not Streetstrider Enterprises. The notices served in October 2011

2.

listed five subjects about which the witness would be deposed, while the other listed two subjects. Both notices requested production of documents in 46 categories. On November 7, 2011, the parties agreed to take the depositions off calendar and reschedule them at another time.

A scheduled trial date was approaching and the discovery cut-off was December 20, 2011. In spite of this, the parties agreed to reschedule the depositions for January 2012. In a series of telephone conversations, the parties' attorneys and members of their attorneys' staffs agreed to continue the trial date and set new deposition dates. On January 3, 2012, Fletcher served new deposition notices for January 9, 10 and 11, 2012. In telephone conversations on January 3 and January 6, 2012, counsel or members of their staffs agreed that the depositions would take place on January 10 and 11, 2012. Each notice listed 11 subjects about which the witness was to testify and requested production of documents in 71 categories.

On January 9, 2012, the parties executed a stipulation to continue the trial from January 17, 2012 to April 23, 2012. The stipulation was filed on January 10, 2012. It stated: "A continuance of the trial and related dates is necessary under the circumstances; depositions have not been finished." The portion of the stipulation that was prepared for the trial court's signature stated: "Based upon the Stipulation of the Parties and Good Cause Appearing the Mandatory Settlement Conference is now set for 3/28/12 @ 10 a.m.; Trial Readiness Conference is now set for 4/20/12 @ 9:30 a.m.; and the Trial date is now set for April 23, 2012 at 8:30 a.m., all dates in department 503 of the above court. All discovery dates are based on the new trial date."

request persons most knowledgeable for HPN Holdings and Streetstrider Enterprises, but not Street Strider International. Further, the notices served in October 2011 state that the depositions are to take place on November 14 and 15, 2011, while a declaration submitted by counsel for Fletcher states that the depositions were noticed for November 9, 10 and 11, 2011. The record does not contain, and the parties do not offer, any explanation for these discrepancies.

3.

Defendants' attorney, Peter Sean Bradley, filed a declaration on January 9, 2012, in support of the stipulation.  It included the following paragraphs:

"2.     This declaration is made on the basis that all depositions haven't been completed.

"3.     The reasons that all deposition[s] have not been completed [is] that there were scheduling conflicts with respect to the out-of-state plaintiff and the intervention of the holidays.  Depositions of the Persons Most Knowledgeable have been scheduled and remain to be conducted.  In addition, [plaintiff's] attorney Bonnie Anderson has recently moved her office.

"4.     The parties have been diligent in completing discovery.  The deposition of plaintiff is set for January 9, 2012 and the deposition of defendant's corporate representative is set for January 10, 2012 but at the present time, scheduling conflicts may preclude the completion of the depositions of the corporate representatives."

Bradley appeared at the offices of his own law firm with David Kraus to defend the deposition of Kraus as a corporate representative on January 10, 2012.  Marlene Hubbell, of Bonnie Anderson's office, appeared to take Kraus's deposition on behalf of Fletcher.  Moments after Hubbell began the deposition, Bradley interjected remarks that commenced a hostile exchange between counsel.  The essence of Bradley's position was that he was not required to proceed with the deposition because, upon reading the most recent notices of deposition for the first time the day before, he found that their scope had been expanded, and he believed the agreement to extend the discovery cut-off was based on an implied condition that the scope would be the same as before.  At the end of this exchange, Bradley terminated the deposition and left the room with Kraus.  We reproduce a portion of the exchange here in the interest of conveying its flavor:

"MR. BRADLEY:  Now, what I want to say is the following:  At all times we agreed to produce the corporate representatives who had been asked for in the previous depositions scheduled in November, which we agreed to continue until after Mr. Fletcher's deposition.  We did not agree to produce any documents.  I'm objecting to all of the production of

4.

documents, either that they've been objected to previously in the original notice of deposition or that they're untimely.

"Secondly, this is not a re-notice as it turns out. I agreed to produce the PMKs [persons most knowledgeable] under the previous notice of deposition. Yesterday looking at it, I discovered that it had been substantially rewritten. Mr. Kraus is sitting here, essentially, unprepared because I had no knowledge that the dep notice—no awareness that the dep notice had been changed until I looked at it yesterday. The dep notices were served on Wednesday.[2] They were in the office Thursday and Friday. And then we had the deposition of Mr. Fletcher yesterday. So there's that. Okay. You can ask your questions.

"MS. HUBBELL: I'm sorry. Let me just put a couple more things on the record.… [¶] … [¶] [W]e have not received any written objection to the deposition notice since it was personally served on January 3rd, 2012.… [T]his morning … I inquired of Mr. Bradley whether we needed to also notify whoever was the Person Most Knowledgeable for HPN that the depositions would be running late and delayed so that we wouldn't have anyone sitting around for them. And he indicated that he wasn't producing anyone because he had not talked to HPN to determine who their Person Most Knowledgeable was. At that point in time he contended also that the subject matters listed in the deposition notice were so overbroad as to cause him to be unable to produce a Person Most Knowledgeable or determine who that person would be, claiming that there may be more than one person knowledgeable in certain areas of the subject matters identified and he indicated initially that he wasn't going to produce anyone. And I inquired when he would be able to produce someone, he initially offered Friday afternoon after the trial readiness. And when I inquired whether he would, quote, unquote, 'fall on the sword' to the Court as being the reason why we couldn't at least get the depositions started or completed before that, he indicated that that was the basis for the continuance request.

"MR. BRADLEY: Now, my turn.

"MS. HUBBELL: I'm not done yet.

---

[2]This conversation took place on Tuesday, January 10, 2012. The preceding Wednesday was January 4. In reality, the deposition notices were served by hand delivery on Tuesday, January 3.

"MR. BRADLEY: When you're finished with your inaccurate recitation I will add something.

"MS. HUBBELL: I was there.

"MR. BRADLEY: Well, I was too.

"MS. HUBBELL: I'm not done yet.

"MR. BRADLEY: I remember what was said.

"MS. HUBBELL: Mr. Bradley, if you would, please, have some courtesy.

"MR. BRADLEY: Well, I won't sit here—

"MS. HUBBELL: Mr. Bradley proceeded to then show me page 4 for the deposition notice for the Person or Persons Most Knowledgeable for HPN where the subject section is listed as to the subjects the person should be most knowledgeable in and complained that the subjects were too broad to permit identification of a particular person most knowledgeable to testify as to those. And, again, he indicated that he would not be producing anyone.

"Mr. Kraus was present and Mr. Bradley directed to him that he supposed we could just simply start with Mr. Kraus and proceed question by question. And if Mr. Kraus didn't know the answer to a question, then we would defer that question and then go find whoever would have the answer to that question. But, quite frankly, it is not the defendant—or the plaintiff's responsibility to figure out who is most knowledgeable in the subject matters designated and this is not a deposition on previously written questions. So I am concerned that Mr. Kraus, present here, may or may not be the Person Most Knowledgeable in those subject matters. So we'll determine that as we go.

"MR. BRADLEY: Well, I don't know at this point. Let me offer the following, since we're making these kind of argumentative statements.

"Number one, I never agreed to produce anybody for the deposition notice that counsel is proceeding under. The deposition—I agreed to produce only the PMKs for the deposition notice that I knew about at the time I made the agreement, which was substantially different. At that time I had prepared my clients for that deposition and we had ascertained which questions would be handled by Mr. Kraus and which would be handled by

6.

Mr. Watkins. I sub—after that, after saying I would produce Mr. Kraus and Mr. Watkins, Ms. Anderson's office rewrote the deposition notice, served it personally on us on Wednesday with a notice for the 9th, which is six days, two of them being a weekend.… In point of fact, I have never agreed to produce anybody for the deposition notice that the—Ms. Anderson's office has served today.

"Out of an attempt to act reasonably, I am willing to have Mr. Watkins act as the corporate representative for this new deposition that I had—did not get notice of until—until the 6th. And assuming that we run into some problem with his knowledge, we'll ascertain who is more knowledgeable.

"Concerning counsel's statement of what was said, she is substantially in error. After she said something about me falling on the sword, I said to her that then she'll have to go in and explain why, after I agreed to produce Mr. Kraus and Mr. Watkins under the previous deposition notice, they surreptitiously blindsided me by creating a new deposition notice and giving me less than the statutorily required time period to prepare. At that point in time we—we—we left off the discussion.

"On reconsideration out of an attempt to be cooperative in the spirit of discovery, I'm willing to let counsel ask questions that she thinks appropriate about the corporation and [its] formation and business of Mr. Kraus. Although, what I'm getting the sense of, is that perhaps we should end this thing right now and go to court for some kind of instruction on it.

"MS. HUBBELL: Well, I know—

"MR. BRADLEY: Do you want to proceed with this?

"MS. HUBBELL: I know you would like to run away from it all together, Mr. Bradley. But I—we'd like to see if we can figure out who it is you're intending to produce. Because your remark just a few minutes ago was then you were just going to designate Mr. Kraus on everything. And if he is, in fact, not the Person Most Knowledgeable, your offer is frivolous and it's not well taken. So—

"MR. BRADLEY: Well, then before I—I—I get myself into a situation where you're accusing me of being frivolous, because I'm bending over backwards trying to accommodate your office, I can go back to my original suggestion, which was that you take the deposition on the

7.

deposition notice that I agreed to produce these people on. Do you want to do that?

"MS. HUBBELL: No. We've got the deposition notice right here. I've attached it.

"MR. BRADLEY: You've got a new deposition notice I didn't see until last Wednesday. It was not the deposition notice I agreed to produce these people under. I never agreed to have them produced on shortened notice under the deposition [notice] you have in front of you.

"Now, if you want to proceed without accusing me of being frivolous under these factual circumstances, I'm willing to proceed that Mr. Kraus is, in fact, after having an opportunity to review that deposition notice that I wasn't given before, I'm willing to proceed that Mr. Kraus is prima facie the Person Most Knowledgeable on the items on the deposition notice. However, as you ask questions, because of the breadth of those subjects that have been designated by your office, if it turns out that he's not the Person Most Knowledgeable, at that point he'll say so and we'll go get somebody else at some other time. That strikes me as an entirely reasonable approach.

"What do you want to do?

"MS. HUBBELL: Well, I'd like to determine whether, in fact, he is the Person Most Knowledgeable. Because just throwing him into the ring at the last minute after telling me initially you didn't know who was and telling me you weren't going to produce anybody—

"MR. BRADLEY: Okay. You know what, I'm—

"MS. HUBBELL: I just—

"MR. BRADLEY: We're done. We're done here. We're done.

"MS. HUBBELL: I just want to make sure—

"MR. BRADLEY: I'm not going to get—I'm not going to have you—

"MS. HUBBELL: —that the person that you're going to take our time with today is, in fact, the Person Most Knowledge[able]. Because we're entitled to have the corporation determine that—

8.

"MR. BRADLEY: I'm done. I've told you—

"MS. HUBBELL: —with your assistance as counsel and provide to us the person who is the most knowledgeable. I'm happy to ask him questions about his level of knowledge to determine that. And I see that you're packing as I'm speaking.

"MR. BRADLEY: No. Yes, you are entitled to ask questions about his knowledge.

"MS. HUBBELL: Right.

"MR. BRADLEY: And if you find he's not sufficient, then I said we would find somebody who could. But if you're going to take the [position] that I'm engaging in frivolous tactics, then this person doesn't have to be here for that deposition notice, because I never agreed to that deposition notice. We're done. Bring a motion to compel.

"MS. HUBBELL: Well, for purposes of this deposition—

"MR. BRADLEY: Bring a motion to compel. If you want to proceed in good faith, I'm willing. I'll be in my office for another ten minutes—

"MS. HUBBELL: For purposes of this—

"MR. BRADLEY: —if you want to—

"MS. HUBBELL: You can stay and listen, but I'm going to complete my record, Mr. Bradley.

"(Mr. Bradley and Mr. Kraus exited the proceedings.)"

Fletcher filed a motion to compel depositions with production of documents on January 24, 2012, and an amended motion on February 2, 2012. The motion argued that Bradley, having agreed to extend the discovery cut-off for the purpose of completing the taking of depositions, and having never objected to defendants' last deposition notice, had no right to terminate Kraus's deposition before any questions were asked. The motion denied that Bradley conditioned his agreement to extend the discovery cut-off on a requirement that the scope of the depositions be controlled by a prior set of deposition

9.

notices. It also argued that Bradley had failed properly to identify any corporate representatives and that his offer to proceed question by question to determine whether Kraus was an appropriate representative was unsatisfactory.

The motion requested monetary sanctions in the amount of $6,061.40. This amount consisted of attorneys' fees for preparing and arguing the motion and appearing for the three depositions that did not take place, plus court reporter fees for those three dates, and the filing fee for the motion.

The motion to compel was supported by a declaration by Fletcher's attorney Hubbell. Hubbell declared that, on the morning of the Kraus deposition, while she and Bradley were waiting for a court reporter to begin the second day of Fletcher's own deposition, Bradley announced that, because he considered the scope designated in the new deposition notices to be too broad, he would not be producing any witnesses for corporate representative depositions. Then Bradley reversed course and pointed to Kraus, who was present to observe the Fletcher deposition, and said, "'We'll just produce *him*' .…" Bradley suggested proceeding "'question-by-question' to 'see if' [Kraus] could answer each specific question and if not, then [defendants] would figure out who could." Hubbell "objected to this proposed method as inappropriate .…"

After Fletcher's deposition was finished, Hubbell, Bradley, and Kraus reconvened for Kraus's deposition as the corporate representative for HPN Holdings. The discussion reproduced above ensued, and Bradley and Kraus left. Later the same day and the next day, according to Hubbell's declaration, Hubbell appeared at the times and places appointed for the depositions of the corporate representatives of Street Strider International and Streetstrider Enterprises. No one appeared for defendants.

Hubbell's declaration stated that Hubbell faxed Bradley a letter on January 12, 2012, requesting to meet and confer on the rescheduling of the corporate representative depositions, and proposing a new schedule. Bradley did not reply until January 18. A further exchange of letters followed, but no agreement was reached. Bradley continued to

maintain that the latest deposition notices were invalid because he had never agreed to an expansion in scope after the discovery cut-off, so he was not obligated to produce witnesses in response to those notices.

In their opposition to the motion to compel, defendants contended that they agreed to extend the discovery cut-off and produce corporate representatives to be deposed because Bradley "had previously prepared for the depositions" based on the prior deposition notices, and his "understanding" was that the scope of the depositions would be limited to the subjects listed in those notices. As evidence that the agreement to extend the discovery cut-off was mutually based on this understanding, defendants submitted a declaration by Bradley's assistant describing a conversation she had with defendants' attorney Anderson on January 3, 2012. The declaration stated that Anderson asked whether it would be necessary to serve new deposition notices. The assistant answered that it would not be necessary because deposition notices had been served previously. Defendants served new deposition notices the same day anyway. A declaration by Bradley stated that he never agreed with Fletcher's counsel to accept new deposition notices and he "assumed that we were verbally agreeing" to rely on the prior notices. Defendants conceded that, because Bradley was out of the office, he did not read the deposition notices served on January 3, 2012, until January 9, 2012.

After a hearing, the trial court granted the motion in a written order on February 29, 2012. It found that, on or before December 27, 2011, the parties made an informal oral agreement pursuant to Code of Civil Procedure section 2024.060 to conduct the corporate representative depositions after the discovery cut-off.[3] The agreement did not include any restrictions on the scope of the depositions. The new deposition notices served by Fletcher on January 3, 2012, constituted the written memorialization of the

_____

[3]Subsequent statutory references are to the Code of Civil Procedure unless noted otherwise.

11.

extension of time required by section 2024.060. The agreement to extend time was again memorialized in the parties' stipulation to continue the trial date and in Bradley's declaration supporting that stipulation. These memorializations also impliedly waived the 10-day notice requirement of section 2025.270, subdivision (a). The court rejected defendants' argument that if they had agreed to extend the discovery cut-off, their agreement extended to all discovery. Bradley's own declaration singled out the deposition of Fletcher and the depositions of defendants' corporate representatives as the particular items of discovery that remained to be completed.

The court found that Bradley's failure to read the deposition notices served on January 3, 2012, was no excuse for his failure to be aware that the scope of the depositions had changed or to make a timely objection. Contrary to defendants' arguments, Fletcher did not "sandbag" defendants in this regard. The conversation between Fletcher's attorney Anderson and Bradley's assistant—in which Anderson asked whether new notices were needed and Bradley's assistant said no—did not show the contrary.

The court further concluded that the transcript of the attempted deposition of Kraus on January 10, 2012, showed that Bradley did not even claim Fletcher's counsel had no right to expand the scope of the depositions. Instead, he offered at one point to produce a witness responsive to the new notices on Friday, January 13, 2012. The court found that this meant Bradley was aware that there was no agreement to limit the scope of the depositions and that he was obligated to produce deponents under the new notices. Bradley's offer to proceed question by question to determine whether Kraus was the appropriate witness under the new notices, and to produce another witness if he was not, also reflected Bradley's awareness that there was no agreement to limit the scope of the depositions and that he was required to produce witnesses responsive to the new notices. The court summarized its findings on this point thus: "In short, the record appears to indicate that if [Bradley] had realized that [Fletcher] wanted to expand the scope of the

12.

depositions, he would have **set the depositions further out,** so he would have more time to prepare his clients. He never said anything indicating that if he had correctly understood [Fletcher's] intent he never would have agreed to allow the depositions."

The court found that the imposition of sanctions was justified. Defendants' failure to submit to the requests for corporate representative depositions was without substantial justification. Prior to the morning of the Kraus deposition, Bradley neither informed plaintiff of his objection to the requested scope of the depositions nor requested additional time to prepare for depositions with expanded scope. Instead, he walked out of the Kraus deposition before questioning began and failed to appear for the other two noticed deposition times. Bradley's continued insistence during the subsequent meet-and-confer process that there had been an agreement to limit the scope of the depositions—despite the lack of any evidence of this agreement—made plaintiff's motion to compel necessary. The costs claimed in the motion were reasonable. The court ordered defendants to produce deponents pursuant to the January 3, 2012, deposition notices no later than March 9, 2012, and to pay the requested amount of sanctions. It also ordered defendants to produce the requested documents.

### *DISCUSSION*

An order awarding sanctions in excess of $5,000 is an appealable interlocutory order. (§ 904.1, subd. (a)(11).) Only the sanctions order is appealable; the underlying order compelling discovery is not. (*Southern Pacific Co. v. Oppenheimer* (1960) 54 Cal.2d 784, 786.) We review the sanctions order for abuse of discretion. (*Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1545.) The trial court has abused its discretion only if its conclusions exceed the bounds of reason. (*Kuhns v. State of California* (1992) 8 Cal.App.4th 982, 988.)

A trial court may impose sanctions "against anyone engaging in conduct that is a misuse of the discovery process." (§ 2023.030.) Misuses of the discovery process include "[f]ailing to respond or to submit to an authorized method of discovery."

13.

(§ 2023.010, subd. (d).) Against "one engaging in the misuse of the discovery process, or any attorney advising that conduct," the court can impose a monetary sanction equal to "the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct." (§ 2023.030, subd. (a).) If a monetary sanction is authorized, the court *shall* impose it "unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (*Ibid.*)

Defendants' argument in this case is that they acted with substantial justification in refusing to produce corporate representative deponents. The justification they offer is that their agreement to submit to the depositions after the discovery cut-off was subject to a condition that the scope of the depositions would be governed by the deposition notices served in November 2011. Since plaintiff served new notices with expanded scope and declared an intent to conduct the depositions under those notices, defendants claim they were under no obligation to produce witnesses.

As we will explain, the trial court did not abuse its discretion in finding that defendants' failure to produce corporate representative deponents lacked substantial justification. The evidence was sufficient to support findings that defendants agreed to an extension of the discovery cut-off in order to allow the corporate representative depositions without imposing any conditions on the scope of those depositions, and therefore had no grounds for refusing to submit to the depositions pursuant to the deposition notices served on January 3, 2012.

Section 2024.060 provides that the parties to an action can enter into an agreement to extend the time for completion of discovery. "This agreement may be informal, but it shall be confirmed in a writing that specifies the extended date." (§ 2024.060.)

The trial court reasonably found that the parties' stipulation to continue the trial date and Bradley's declaration in support of that stipulation were a confirmation in writing of the agreement to extend the discovery cut-off in order to allow the corporate

14.

representative depositions and the deposition of Fletcher. The court also reasonably found that the deposition notices served on January 3, 2012, were an additional writing confirming the agreement. Further, the court made a proper determination that the stipulation, which was executed only one day before the depositions were to begin and *after* Fletcher served the new deposition notices, waived the 10-day notice requirement of section 2025.270, subdivision (a).

The court also properly determined that, by failing to serve a written objection pursuant to section 2025.410, subdivision (a), defendants waived their objection to the scope specified in the deposition notices. Section 2025.410 provides that any claim that a deposition notice does not comply with article 2 of the Civil Discovery Act is waived unless promptly objected to in writing. Section 2025.230, mandating a description of the matters on which examination is requested in a notice of a corporate representative deposition, is within article 2.

The trial court could reasonably find that the evidence did not establish any term of the parties' agreement that would have limited the scope of the depositions allowed within the extended time. Presumably, section 2024.060 requires written confirmation of an agreement to extend discovery just so disputes over what was said can be avoided. The trial court could reasonably give greater weight to the written stipulation and supporting declaration, which omitted any reference to a scope limitation, than to the evidence of oral statements submitted by defendants.

Even when the evidence of oral statements is considered, it is far from compelling a finding that a scope limitation existed. Defendants cite remarks in Bradley's declaration: "I spoke to Ms. Anderson about permitting the taking of the depositions of the [persons most knowledgeable] which had previously been set. I expressed the idea that I would agree to that since I had already prepared them for their depositions." The court was not required, however, to find that the agreement included Bradley's unspoken assumption that, because he said he had already prepared witnesses for the depositions,

15.

the agreement included an implied term specifying that notices calling for additional preparation could not be served. In light of the writings memorializing the agreement, which said nothing about a scope limitation or about the prior notices, the court was not even required to credit Bradley's recollection of what he said to Anderson. Defendants also rely on the declaration by Bradley's assistant that Anderson asked the assistant whether new deposition notices were necessary and the assistant answered that they were not, since notices had been served before. But the court was not required to find an implied scope limitation based on this evidence either. Anderson hardly committed herself to not sending revised notices merely by asking this question.

Finally, even if the parties had agreed to limit the scope of the depositions as described in the prior notices, and even if defendants had not waived their objections to the scope as described in the new notices by failing to serve those objections in writing, Bradley's decisions to take his witness and walk out of the deposition before any questions had been asked, and to fail to appear for the other scheduled depositions at all, still would have been a sanctionable misuse of the discovery process. It is undisputed that the parties agreed that depositions of defendants' corporate representatives would take place after the discovery cut-off. Defendants had no right to refuse to submit to those depositions even if there was disagreement about their scope. By Bradley's own admission, he had already identified and prepared witnesses to respond to the prior deposition notices. Even if Bradley were entitled to rely on those notices (which, as we have said, the trial court properly held he was not), he could at most use them as a basis for objections during the depositions. Walking out and not coming back, and not appearing at the other scheduled depositions, were not among his legitimate options.

Although the parties have not mentioned it, another consideration supporting the trial court's order is that a deposition can be suspended without the stipulation of all parties only if a party or deponent demands suspension in order to make a motion for a protective order. (§ 2025.470.) Bradley made no such demand or motion. Consequently,

16.

he never asked the court for the remedies specified in section 2025.420, which provides in relevant part:

> "(a) Before, during, or after a deposition, any party … may promptly move for a protective order.  The motion shall be accompanied by a meet and confer declaration under Section 2016.040.

> "(b) The court, for good cause shown, may make any order that justice requires [, including]:  [¶] … [¶]

> "(9) That certain matters not be inquired into.

> "(10) That the scope of the examination be limited to certain matters.

> "(11) That all or certain of the writings or tangible things designated in the deposition notice not be produced …."

At the end of his brief, Fletcher asks us to award "costs and attorneys' fees on appeal" and alternatively asks us to remand the case to the trial court for the "purposes of affixing a further award of monetary sanctions so that [he] may recover his expenses—both attorneys' fees and costs, on this appeal."  As the party prevailing on appeal, Fletcher is entitled to an award of *costs on appeal*.  (Cal. Rules of Court, rule 8.278.)  Fletcher cites no authority and presents no arguments in support of the other requested relief.  Our rejection of the request for additional relief is without prejudice to any motion Fletcher may make on this subject in the trial court.[4]

---

[4]Defendants submitted a request for dismissal in this court well after oral argument.  Having considered the matter, the court denies the request and issues the opinion for the education of the bench and bar.  (Cal. Rules of Court, rule 8.244(c)(2).)

17.

## *DISPOSITION*

The order awarding sanctions is affirmed.  Costs on appeal are awarded to respondent Fletcher.

_____

LaPorte, J.[*]

WE CONCUR:

_____

Kane, Acting P.J.

_____

Franson, J.

---

[*]Judge of the Superior Court of Kings County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18.