[No. B180103. Second Dist., Div. Six. Aug. 22, 2005.]

In re the Marriage of KATHRYN CALCATERRA and OMID BADAKHSH.
KATHRYN CALCATERRA, Respondent, v.
OMID BADAKHSH, Appellant;
VENTURY COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES,
Respondent.

## Counsel

Omid Badakhsh, in pro. per.; Gumm & Green and Lindsey B. Green for Appellant.

Donna De Paola for Respondent Kathryn Calcaterra.

Bill Lockyer, Attorney General, Thomas R. Yanger, Assistant Attorney General, Margarita Altamirano and James Ching, Deputy Attorneys General, for Respondent Ventura County Department of Child Support Services.

## Opinion

**YEGAN, J.**—Family law courts have a difficult task. They must characterize property, divide community property, and award spousal and child support. This undertaking becomes even more challenging when a party submits misleading or false information to the court. Where the trial court recognizes deception, it may draw adverse factual inferences and even refer the matter for perjury prosecution. As we said in *In re Marriage of Chakko* (2004) 115 Cal.App.4th 104, 110 [8 Cal.Rptr.3d 699], the courts will not tolerate those who interfere with the truth-seeking function of the trial court. Here the trial court expressly opined that appellant, Omid Badakhsh (father), committed perjury.[1] Father appeals from the order increasing his child support obligation from $350 per month to $1789 per month. He contends: (1) the evidence is insufficient to support the trial court's determination of his income, (2) the trial court erroneously refused to accept a proposed modification of the DissoMaster calculation of child support, (3) the trial court erred in not imputing income to mother of $9,000 per month based on her earning capacity, and (4) the trial court should have evaluated mother's fitness as a parent. These contentions are premised upon evidence that was not credited by the trial court. We do not retry cases on appeal and we affirm the child support modification order.

### Factual and Procedural Background

Father and mother were married in August 1988 and separated in October 1991. They have one child who was born in 1991. In December 1992 father was ordered to pay monthly child support of $350. After the marriage was dissolved, father remarried and has two children from the remarriage.

In December 2003 the Ventura County Department of Child Support Services moved to modify child support. Mother declared that she had lost

---

[1] The trial court also opined that Kathryn Calcaterra (mother) committed perjury. (See *post,* at p. 33.)

her job and was physically unable to work because of fibromyalgia syndrome. She stated that her current net monthly disposable income was $2,401 and that her monthly expenses were $4,309. Later, she declared that the previous month she had received wages of $1,279.65 and disability payments of $2,631.63. Her average monthly expenses were $2,910.53.

In June 2004 father executed an Income and Expense Declaration. He declared that his average net monthly rental property income was $417.32 and that his average net monthly self-employment income was $1,297.60. Father owns and operates a self-service gas station: Omid's Unocal 76. He said that his average monthly expenses were $5,330.32 and that his present wife contributed $3,291.55 toward these expenses.

Father submitted to the trial court Schedule C (Profit or Loss from Business) for his 2001 and 2002 federal income tax returns. The 2001 Schedule C showed that father's gas station business had sustained a loss of $7,104. The 2002 Schedule C showed a profit of $15,393.

Father also submitted the 2003 federal income tax return jointly filed by him and wife. Schedule C showed gross receipts of $2,124,010 and a profit of $6,662. Schedule E (Supplemental Income and Loss) showed real estate rents received of $156,589. Father deducted expenses of $111,424 and depreciation of $21,344. After the deductions, his net rental income for the year was $23,821.

The trial court conducted a hearing on the motion to modify child support. Father testified as follows: In 2003, his gross income for the year was $30,483: $23,821 from the rental properties and $6,662 from the gas station. In 2002 his gross income for the year was $28,267, and in 2001 it was $9,965. Omid's Unocal 76 has two business checking accounts that father maintains at $50,000 monthly balances. He testified that this was necessary to pay for gasoline delivered to the station.

Father owns two residences. He testified that he is the legal owner of a residence on Timberidge Court in Westlake, but that his parents are the true owners and reside there. Father and his present wife own and live in a residence on Featherwood Street in Thousand Oaks. The mortgage on the Featherwood residence is over $600,000 and the monthly payment is $3,145.99. Father also owns rental properties (apartments) in Pasadena, Fresno, Pomona, and Los Angeles.

A loan application on the Timberidge Court property, signed under penalty of perjury, bore the name and the signature, "Omid Badakhsh." However, father denied signing it. The application, dated November 13, 2002, stated that he had a monthly net rental income of $3,117.80 and a monthly employment income of $11,830. In addition, the application stated that father's assets were $2,661,900, including real estate with a market value of $2,525,000, that his liabilities were $1,344,342, and that his net worth was $1,317,558. Father testified that all of these figures were wrong.

Father admitted signing a loan application for the Featherwood Street property, although he testified that he had not read the application before signing it. The application was executed on May 2, 2003. It named father as the borrower and wife as coborrower. The application stated that the borrower had a monthly net rental income of $1,570.19 and a monthly employment income of $22,300. Father and wife jointly completed the application's statement of assets and liabilities. The statement showed assets of $2,671,900, including real estate with a market value of $2,590,000, liabilities of $1,800,301, and an approximate net worth of $870,000.

Mother testified as follows: She lives with her parents and does not pay rent. Her annual income for 2002 and 2003 was approximately $42,000. She has fibromyalgia syndrome which prevents her from working full time. From January 2004 to March 2004 she was employed part time as a case manager at a hospital. She earned $24 per hour. She is presently on complete disability because of two herniated discs. Her current income is approximately $2,600 per month. That amount includes state teacher's disability and unemployment benefits of $182 per week. Her total expenses are about $4,700 per month. She possesses two teaching credentials and has a doctorate in clinical psychology. She cannot get a job as a registered psychologist assistant because "[t]he jobs are not there."

The trial court found that both parties had intentionally misrepresented their incomes and expenses: "Both of you have been dishonest with the Court under penalty of perjury." Based on mother's average monthly bank deposits of $6,000, the court found that her annual income was $72,000. As to father, the trial court stated, ". . . I don't find credible that he didn't sign the [2002] uniform residential loan application." The court relied on that application in determining his income: "The Court hereby finds that his monthly income is $27,996.80. I have accepted $14,947.80 per month for [the loan application dated] November 13, 2002 plus an additional $13,049 for the rental income for the several properties. That's a total of $27,996.80 per month."

A DissoMaster calculation was prepared showing father's monthly income as $27,996.[2] Based on that calculation, the trial court ordered father to pay monthly child support of $1,789. He unsuccessfully filed a motion for reconsideration.

### Standard of Review

■ " ' "[T]he trial court's determination to grant or deny a modification of a support order will ordinarily be upheld on appeal unless an abuse of discretion is demonstrated." [Citation.] Reversal will be ordered only if prejudicial error is found after examining the record of the proceedings below. [Citation.]' . . . [¶] To the extent [appellant] challenges the trial court's factual findings, our review follows established principles concerning the existence of substantial evidence in support of the findings. On review for substantial evidence, we examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference. [Citation.] We accept all evidence favorable to the prevailing party as true and discard contrary evidence. [Citation.]" (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1150–1151 [62 Cal.Rptr.2d 466].) "We do not reweigh the evidence or reconsider credibility determinations. [Citation.]" (*In re Marriage of Dandona & Araluce* (2001) 91 Cal.App.4th 1120, 1126 [111 Cal.Rptr.2d 390].)

### Sufficiency of the Evidence

Father contends that the evidence is insufficient to support the trial court's finding that his monthly income was $27,996.80. He claims that the trial court erroneously relied on his November 13, 2002 loan application. Father maintains that the trial court should have accepted the income shown on his income tax returns.

■ "A parent's gross income, as stated under penalty of perjury on recent tax returns, should be presumptively correct. [Citation.] Returns are, after all, ultimately enforced by federal and state criminal penalties. Hence it is not surprising that tax returns are the core component of determinations under the guideline formula." (*In re Marriage of Loh* (2001) 93 Cal.App.4th 325, 332 [112 Cal.Rptr.2d 893].)

We conclude that the presumption of correctness of recent tax returns may be rebutted by a statement of income on a loan application where, as here, the

---

[2] "The DissoMaster is one of two privately developed computer programs used to calculate guideline child support as required by [Family Code] section 4055, which involves, literally, an algebraic formula." (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 524, fn. 2 [70 Cal.Rptr.2d 488].)

parent owns his own business. In *In re Marriage of Chakko, supra,* 115 Cal.App.4th 104, this court upheld the trial court's reliance on the father's loan application to determine his income. The father, who owned several businesses, had refused to provide the mother with his tax returns and other relevant financial information. His loan application showed a monthly income of $40,000. The father contended "that the sole evidence of his income, the loan application, does not constitute substantial evidence because it was completed by a third party, contains only an estimate of his actual earnings, and bears a forged signature." (*Id.,* at pp. 108–109.) We rejected his contention: "The loan application, standing alone, constitutes substantial evidence that Father's income was $40,000 per month. [Citation.] A spouse who is the owner of a successful business and who has control of his or her income can structure income and the payment of expenses to depress income. This is not fair if it inures to the detriment of children. Here, the trial court drew the inference that Father's structuring of income and expenses was an attempt to minimize child support obligations. [Citation.]" (*Id.,* at p. 109.)

We recognize that, unlike the father in *Chakko,* the father in this case provided his tax returns to mother. Nevertheless, in view of the huge discrepancy between the tax returns, the 2002 and 2003 loan applications, his income and expense declaration, and testimony, the trial court was not required to accept the statement of income on the tax returns.

Father contends that the 2002 loan application was "out-dated" because it had been executed 22 months before the hearing on the motion to modify child support. The trial court, however, did not believe him and could reasonably draw the inference that father's income had not decreased since the 2002 loan application was made.

 Father maintains that the figure of $14,947.80 on the 2002 loan application is "gross household income" that includes wife's earnings from her employment. The income of a subsequent spouse cannot be considered in modifying child support "except in an extraordinary case where excluding that income would lead to extreme and severe hardship" to the supported child. (Fam. Code, § 4057.5, subd. (a)(1).)[3] But the trial court did not believe him and could draw the inference that the income figure on the 2002 application did not include wife's earnings. The 2002 application states that father is the sole borrower, that his employer is Omid's Unocal 76, and that his monthly employment income is $11,830. The application does not mention wife or her employer.

 The 2002 loan application coupled with the 2003 federal income tax return constitute substantial evidence supporting the finding that father's

---

[3] All statutory references are to the Family Code.

gross monthly income was $27,996.80. The trial court stated: "I have accepted $14,947.80 per month for [the loan application dated] November 13, 2002 plus an additional $13,049 for the [monthly] rental income for the several properties [28 apartments in Fresno, Pasadena, Pomona and Los Angeles listed on the 2003 federal income tax return]. That's a total of $27,996.80 per month." Even if the figure of $14,947.80 on the 2002 loan application included monthly rental income for some of father's properties, i.e. $3,117.80, the trial court was not required to factually so find.[4] The variances in his tax returns, loan applications, income and expense declaration, and his testimony compel but one conclusion, the one drawn by the trial court, i.e. father committed perjury. His income and expense declaration just doesn't "add up." He owns a Unocal 76 gas station, two residences, and 28 apartments. His labors and these properties allegedly produce a net income of $1,714 per month. This declaration simply does not have the "ring of truth."

The trial court was not required to, and expressly said that it did not, accept appellant's claim that his net monthly rental income was $417. Father may have thought that he was "pulling off" a financial charade but the trial court saw through this "creative accounting" performance. It expressly said it would be unreasonable to credit the $417 claim of net monthly rental income.

■ Father claims that it was and is unfair to use the gross rental income without deducting expenses. He is wrong. Any unfairness is occasioned by father's perjury. The trial court sits as a trier of fact on a motion to modify child support. "[A] trier of fact may believe and accept as true only part of a witness's testimony and disregard the rest." (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 830 [15 Cal.Rptr.3d 876]; *People v. Hrisoulas* (1967) 251 Cal.App.2d 791, 796 [60 Cal.Rptr. 80].) We hold that where, as here, a document is prepared by the witness or at his direction, the same rule applies. Thus, the trial court could credit father's indication of gross income and disregard his indication of expenses necessary to service the properties.

At oral argument, father requested that we reverse and remand so that he could have the opportunity to show legitimate expenses. We are hard pressed to see how he could do so without impeaching his 2003 federal tax return. As Presiding Justice Gilbert pointed out at oral argument, granting this request would confer a benefit for the commission of perjury at the first hearing.

---

[4] The record does not disclose the address or addresses of the rental property which allegedly produced this income. Father has not demonstrated as a matter of law that this $3,117.80 rental income is duplicative of a portion of the $13,049 monthly rental income for the identified rental properties.

At oral argument, father conceded that the record does not show, as a matter of law, that the trial court "double counted" appellant's rental income.

■ Father argues that the trial court erroneously allocated to him all of the income from Omid's Unocal 76 and the rental properties. For the first time on appeal, he claims that the business and rental properties were community property, so that only half of the income should have been allocated to him. Because this issue was not raised in the trial court, it is waived. "For better or worse, California child support law now resembles determinate sentencing in the criminal law: The actual calculation required of the trial judge has been made so complicated [citation] that, to conserve judicial resources, any errors must be brought to the trial court's attention at the trial level while the [theoretical] error can still be expeditiously corrected. [Citation.]" (*In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 144 [61 Cal.Rptr.2d 559].)

### Reconsideration

At the hearing on father's motion for reconsideration, counsel for the Ventura County Department of Child Support Services (DCSS) stated that he had "suggested" to counsel for both parties that the DissoMaster entries be modified to subtract from father's income the earnings of his present wife. The trial court refused to accept "the new proposed DissoMaster offered by DCSS." It said that there were no new facts, and that the alleged "new" facts were known to father and his attorney at the live-witness hearing. It also said the entire case was "captured by the following phrase . . . less than credible."

Father contends that the trial court erred. The issue is waived because father never requested that the trial court accept "the new proposed Disso-Master offered by DCSS." (See *In re Marriage of Whealon, supra,* 53 Cal.App.4th at pp. 143–144.) Furthermore, as explained, *ante,* the trial court could have reasonably concluded that the gross income figure of $14,947.80 on the 2002 loan application did not include wife's earnings.

### Imputed Income

■ "By express statutory provision, trial courts have discretion to impute income to a parent based on earning capacity. (§ 4058, subd. (b).)" (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 301 [111 Cal.Rptr.2d 755].) That is what the trial court did here. (See, *ante,* at p. 33.) Father contends that the trial court erred in not imputing income to mother of $9,000 based on earning capacity, as opposed to the imputed $6,000 per month based on her monthly bank deposits.

The trial court did not abuse its discretion. Mother testified that she was on complete disability because of two herniated discs and that she suffered from fibromyalgia syndrome, which prevented her from working full time. In

addition, she testified that she is not a licensed clinical psychologist and cannot get a job as a registered psychologist assistant because "[t]he jobs are not there."

### Mother's Fitness

Father contends that, before increasing child support, the trial court should have evaluated mother's fitness as a parent. The issue of mother's fitness as a parent was not properly before the trial court on a motion to modify the amount of child support.

### Conclusion

Cases like this one are far too common. Income and expense declarations are executed under penalty of perjury. Some, like father's 2004 declaration just don't "add up." We are confident that family law courts can determine which declarations have the "ring of truth" and which do not.

The courts cannot prevent parties to a dissolution from lying to each other. But, when they lie to the court they do so under penalty of perjury subjecting themselves to criminal prosecution. A trial court is not required to refer such cases to the district attorney or the Internal Revenue Service and Franchise Tax Board when it believes a crime has been committed. But, it should not be faulted for doing so. (See Rothman, Cal. Judicial Conduct Handbook (1999 2d ed.) § 5.68, p. 157 [public confidence "would be eroded if the public perceived that judges looked the other way when they heard evidence that a crime had been committed by any of the parties in a case pending before the judge"].) If a trial court, in the exercise of its discretion, elects to report a crime to an appropriate agency, it should not become an advocate. It should simply make the referral and let the agency exercise its powers whether or not to go forward.[5]

■ A judgment based upon factual truth is a legitimate goal of any judicial proceeding. Neither the trial court, nor this court, know the true state of father's financial affairs. That is his fault. Family law court is a court of equity. (*In re Marriage of Egedi* (2001) 88 Cal.App.4th 17, 22–23 [105 Cal.Rptr.2d 518].) Those who seek equity, must do equity and have "clean hands." (*Keith G. v. Suzanne H.* (1998) 62 Cal.App.4th 853, 862 [72 Cal.Rptr.2d 525].) Father is in no position to complain that the trial court drew adverse inferences in modifying child support. The trial court's order is supported by substantial evidence and the reasonable inferences which flow therefrom.

---

[5] The record does not disclose what part, if any, counsel for father played in the preparation of the 2004 income and expense declaration. Suffice it to say that counsel in family matters are officers of the court and may not assist a client in an effort to deceive the court.

The order modifying father's child support obligation is affirmed. Wife is awarded costs on appeal.

Gilbert, P. J., and Coffee, J., concurred.