Filed 9/16/14  Marriage of Cross and Melim CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of MELANIE CROSS and NELSON MELIM.<br><br>_____<br><br>MELANIE MARIE CROSS,<br><br>    Appellant,<br><br>    v.<br><br>NELSON D. MELIM,<br><br>    Respondent. | H039666<br>(Santa Cruz County<br> Super. Ct. No. FL021732) |

Appellant Melanie Marie Cross sued her former spouse, respondent Nelson D. Melim, for child support.  The parties could not resolve the matter informally, with both parties disputing the other's stated income.  Appellant renewed her request even though respondent had warned her that she would owe him child support using her stated income figure.  Appellant sought attorney's fees and costs as a sanction for respondent's alleged lack of cooperation during the informal negotiation process.  Respondent counter claimed for child support and his attorney's fees.  The trial court accepted respondent's stated income, rejected appellant's, ordered appellant to pay monthly child support, and awarded respondent his attorney's fees as a sanction.  Finding no abuse of discretion, we will affirm the trial court's order.

# I. BACKGROUND

Appellant and respondent had two children during their seven-year marriage. The couple separated in 2005, and in 2007 appellant was arrested and charged in Santa Clara County with embezzlement and grand theft. Appellant served time in prison and was released on parole in November 2009. Although respondent had sole legal and physical custody of the children during appellant's incarceration, the parties informally agreed to share physical custody after appellant was released, with appellant having the girls about 40 percent of the time.

On July 23, 2012, appellant filed a request for joint legal and joint physical child custody and child support because she felt that respondent was unfairly setting the terms of the informal custody arrangement, using the girls and her fear of losing them as leverage. She also sought attorney's fees and costs under Family Code section 2030[1] based on income disparity and respondent's ability to pay for her legal representation.

The parties attended Child Custody Recommending Counseling and, on October 12, 2012, the court adopted the counseling recommendations which included joint legal custody and continued shared physical custody. The parties agreed to meet and confer to negotiate a child support order, and the matter was taken off calendar with the court reserving jurisdiction to modify support retroactively to the date of service of appellant's motion.

Appellant filed a new request for child support and attorney's fees on February 13, 2013. She submitted an income and expense declaration stating $2,000 in monthly income. She claimed that respondent's October 2012 income and expense declaration, which had reported $3,738 in gross monthly income, did not reflect respondent's actual income which she estimated at $8,000 monthly. Appellant also took issue with the depreciation factored into respondent's income and certain claimed expenses. She sought

---

[1] Further statutory references are to the Family Code.

$10,563 in attorney's fees and costs as a sanction under section 271-$6,563 in incurred (but not yet paid) fees and costs and $4,000 in anticipated fees. She claimed that respondent had not been cooperating in the child support negotiation efforts by failing to respond to her informal income requests, while she had been responsive to respondent's inquiries.

Respondent filed a new income and expense declaration claiming $2,932 in gross monthly income, supported by a 2012 Schedule C showing $35,182 in net profit. He also filed a responsive declaration seeking child support from appellant and requesting that appellant's gross income be calculated at $3,614 per month instead of $2,000 per month based on appellant's checking account statements.

Respondent's declaration addressed appellant's income in detail: Appellant claimed $2,000 in gross monthly income working as a personal assistant. Appellant's checking account statements showed that appellant's employer, Ryan L. Beck, paid appellant by direct deposit in frequent and random amounts. For example, appellant's February 2013 bank statement showed 15 separate electronic banking transfers from Beck totaling $4,385, in amounts varying between $50 and $600. Respondent complained "it's unclear who Ryan L. Beck actually is, or what type of business he's engaged in, or why he would employ a personal assistant. He seems to have no presence on the internet or anywhere in the community and his physical address is an isolated residence on Empire Grade Road, Santa Cruz." He continued: "[M]y attorney served a subpoena on Mr. Beck seeking all employment records pertaining to [appellant]. In response we received a single document consisting of a handwritten 2012 1099-MISC. The subpoena request was broad and asked for numerous records but all we received was the 1099 with no further explanation." Respondent noted that the multiple Beck deposits totaled between $500 and $4,385 per month and $25,485 for the one-year period ending February 28, 2013, and further noted that appellant's bank records showed an additional $17,886 in ATM and branch deposits.

Respondent also reported that the home appellant shared with her husband, Michael Ladage, was raided by police on August 3, 2012. [2] According to the Scotts Valley Police Department press release, the search yielded large sums of cash, cocaine, 120 marijuana plants, and several containers of processed marijuana. Ladage was arrested and later released on bail.

According to respondent, appellant refused to respond to his March 2013 request for documents supporting Ladage's $3,600 gross monthly income as stated on appellant's income and expense declaration, claiming it was burdensome and intrusive. Respondent provided the trial court with postings on Ladage's Facebook page, including a pile of $100 bills and what appeared to be six bags of Gucci products following a shopping spree with the statement "Little Guc Dnt Hurt!!" Appellant also had posted a picture of a Louis Vuitton purse with the caption "Big Pimpn!! Look Out!!" and a picture of 2012 Raiders season tickets with the caption "My ♥ got me season tickets for the Raiders!!"

Respondent requested $565 in monthly child support based on appellant's gross annual income of $43,371 and his gross annual income of $38,232. He also sought a $3,537 attorney's fee award pursuant to section 271, explaining that his attorney "has been telling [appellant's] attorney for months that it makes no sense to litigate this case." Respondent had told appellant that she would actually owe him child support using her $2,000 figure as claimed monthly income, even if depreciation were added into his income figure, when his daycare expenses were factored into the calculation. Respondent declared: "This case has been a nightmare. No matter how many records we provide or offers we make, [appellant] won't stop the process. It's spilling over into other areas of my life and the conflict must be affecting our kids."

---

[2] Although appellant and Ladage were married sometime in 2012, it is unclear whether they were married at the time of the raid. Appellant had reported being single on her July 23, 2012 income and expense declaration.

4

A hearing was held on April 26, 2013, with both parties and counsel present. Although a party may arrange for a court reporter in family court proceedings (Super. Ct. Santa Cruz County, Local Rules, rule 3.7.01), neither party elected to do so. The court used the DissoMaster program to calculate child support using the gross monthly income figures proffered by respondent-$3,614 for appellant and $3,186 respondent. The program considered the income of each party's new spouse to calculate each party's tax liability and resulting net disposable income. The court ordered appellant to pay respondent $558 in monthly child support effective August 1, 2012, and $3,537 in attorney's fees under section 271.

Appellant appeals from the trial court's May 17, 2013 order after hearing, challenging both the child support determination and the attorney's fee award.

## II. DISCUSSION

### A. STANDARD OF REVIEW

We review a child support order for abuse of discretion. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 282.) Reversal is warranted only if the record shows prejudicial error. (*In re Marriage of Williams* (2007) 150 Cal.App.4th 1221, 1233-1234.) We resolve any conflicts in the evidence in favor of the trial court's determination. (*Id.* at p. 1234.) When "the trial court's order … finds substantial support in the evidence, … no abuse of discretion is shown." (*Dean v. Dean* (1963) 59 Cal.2d 655, 657.)

An award of attorney's fees under section 271 is also reviewed for an abuse of discretion. (*In re Marriage of Falcone and Fyke* (2012) 203 Cal.App.4th 964, 995.) " '[W]e will overturn such an order only if, considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order.' " (*Ibid.*)

5

**B.    SPOUSAL INCOME**

A new spouse's income is necessary to any child support determination to calculate the supporting parent's net disposable income when the supporting parent and his or her new spouse file a joint tax return. (§ 4059, subd. (a).) Because her 2012 filing status was married filing separately, appellant contends that the trial court should have calculated her net income using that filing status. Appellant argues that the trial court erred by calculating her tax liability, and thus her adjusted income for support obligation purposes, using a joint tax filing status, which necessarily required consideration of her new spouse's income. She incorrectly assumes that the trial court directly considered her new spouse's income in its support determination. The child support guideline software only considers spousal income insofar as it impacts the applicable tax rates of the parties subject to the support order, and is not considered as additional income available to pay child support. (*California Guideline Child Support Calculator-User Guide* (rev. June 2014, p. 25, Cal. Dept. of Child Support Services.)

We agree with respondent that appellant forfeited this claimed error by failing to raise it in the trial court. Respondent's proposed DissoMaster calculation, attached to his April 23, 2013 responsive declaration, used a joint tax filing status for both parties. Respondent asserts that the court relied on his DissoMaster calculation at the April 26 hearing and that appellant did not challenge the use of that tax filing status to calculate net income, even though she proffered her 2012 tax returns at the hearing. Appellant filed no reply brief countering respondent's recollection of the hearing. More importantly, the record contains no evidence that appellant raised her tax filing status concern with the trial court. She cannot now assert error when she never raised her concern below. (*In re Marriage of Calceterra and Badakhsh* (2005) 132 Cal.App.4th 28, 37 (*Marriage of Calceterra and Badakhsh*) [child support calculation issues waived if not raised in the trial court].)

6

Even if the issue were not waived, appellant fails to show that the trial court abused its discretion calculating her net income using a joint tax return filing status. Respondent claims that appellant's child support obligation actually would increase using a married filing separately status. Appellant does not contest respondent's calculation and offers none herself. Thus, appellant has failed to show prejudice. (*In re Marriage of Williams*, *supra*, 150 Cal.App.4th at pp. 1233-1234.)

## C.    APPELLANT'S INCOME

Appellant argues that the trial court abused its discretion by imputing an additional $1,600 to her monthly income. She claims that evidence of her stated monthly income ($2,000) was supported by her recent tax returns, bank statements, and a declaration from Beck addressing deposits made in excess of her monthly salary. Appellant asserts that it would be error to impute an additional $1,600 in "fictional" income based on her potential earning capacity or lifestyle evidence, referring to the Facebook postings.

Respondent correctly notes that earning capacity and lifestyle evidence are not implicated by the trial court's ruling. The court fixed appellant's income based on deposits to her bank account during the preceding 12 months totaling $43,371. Appellant persists that the Beck declaration accounts for the deposits exceeding her claimed $24,000 annual salary. In that declaration Beck explained that appellant performs various tasks in his employ including paying bills, purchasing office supplies, and maintaining his household, and that appellant is frequently reimbursed for costs associated with those tasks  Appellant produced no evidence-not a single receipt-for reimbursable expenses paid on behalf of her employer. And while Beck addressed the electronic transfers from his account to appellant's account, his declaration failed to account for the additional ATM and branch deposits totaling $17,886. In light of the record before us, it was not an abuse of discretion for the trial court to characterize all deposits to appellant's checking account as income.

## D. RESPONDENT'S INCOME

Respondent claimed $2,932 in monthly income on his March 2013 income and expense declaration. That figure was taken from respondent's 2012 Schedule C in which respondent claimed a net annual profit of $35,182 as a sole proprietor. Appellant objected to the depreciation that was factored into that amount. Respondent conceded the point in his responsive declaration filed a month later, agreeing that $3,050 in Schedule C depreciation should be added to his gross income for child support calculation purposes. Respondent used the higher figure ($38,232 or $3,186 per month) in his proposed DissoMaster calculation and the court accepted that figure.

Appellant argues that the trial court abused its discretion by not adjusting respondent's monthly income to $9,000 based on a 2011 automobile loan application and perceived inconsistencies in respondent's bank statements, tax return, and income and expense declaration. Although appellant represented in her motion to augment the record in this court that she proffered respondent's bank records at the April 26 hearing, respondent claims that was not done. He also contends that appellant did not argue the discrepancies below that she now asserts. Even if the bank records were proffered below, the record before us does not show that the discrepancies appellant now complains of were brought to the trial court's attention, and we will not consider them as a basis for trial court error in the first instance on appeal. (*Marriage of Calceterra and Badakhsh*, *supra*, 132 Cal.App.4th 28, 37.)

In *Marriage of Calceterra and Badakhsh*, the trial court calculated a father's child support obligation based in part on a mortgage loan application father signed under penalty of perjury declaring over $14,000 in monthly income. (132 Cal.App.4th 28 at p. 33.) The father owned a gas station, 28 apartments, and two residences, yet he claimed a net monthly income of $1,715 on his income and expense declaration. (*Id*. at p. 36.) The trial court found that the income and expense declaration "didn't add up" and lacked the "ring of truth," and that father had perjured himself. (*Id*. at p. 36.) The appellate court

8

upheld the trial court's child support determination, observing that it does " 'not reweigh the evidence or reconsider credibility determinations,' " and that it " 'accept[s] all evidence favorable to the prevailing party as true.' " (*Id*. at p. 34.)

Citing *Marriage of Calceterra and Badakhah*, appellant contends that the trial court should have rejected respondent's stated income and instead relied on the $9,000 figure shown on the incomplete automobile loan application. To the contrary, *Marriage of Calceterra and Badakhah* supports the trial court's determination here. The trial court found respondent's income and expense declaration, supported by a 2012 tax return, credible. We will not reweigh the evidence or the trial court's credibility determination. (*In re Marriage of Williams*, *supra*, 150 Cal.App.4th 1221, 1234.)

### E.     ATTORNEY'S FEES AND COSTS

Section 271, subdivision (a) allows the court to award attorney's fees and costs in family law proceedings based on "the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." The award "is in the nature of a sanction." (*Ibid*.)

Appellant argues that the trial court should have awarded her attorney's fees and costs under section 271 due to respondent's continual failure to cooperate with her informally, and that the court awarded section 271 attorney's fees to respondent "without any evidentiary or reasonable basis for doing so." However, the October and November 2012 e-mails between counsel, which appellant presses support her section 271 motion, are unremarkable and do not demonstrate an abuse of discretion in denying her motion.

Nor can we conclude, on the record before us, that no judge could reasonably have awarded attorney's fees and costs to respondent. (*In re Marriage of Falcone and Fyke*, *supra*, 203 Cal.App.4th 964, 995.) Appellant insisted on litigating child support even though her bank account showed her income as nearly twice what she had claimed. Appellant persisted in denying additional income of $17,000 even though she provided

9

no evidence accounting for the ATM and branch deposits.  Appellant was put on notice by respondent that she would owe him child support when daycare expenses were factored into the calculation, even if the court were to accept her claimed $2,000 monthly income.   No abuse of discretion occurred in holding appellant responsible for respondent's legal fees.

## III.  DISPOSITION

The May 17, 2013 order is affirmed.

10

_____

Grover, J.

**WE CONCUR:**

_____

Bamattre-Manoukian, Acting P.J.

_____

Márquez, J.