Filed 9/22/22  Marriage of Goodwin CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re the Marriage of ALEXANDER G. and CORINE C. GOODWIN. | B312142 |
| | (Los Angeles County Super. Ct. No. SD031174) |
| ALEXANDER G. GOODWIN, Respondent, v. CORINE C. GOODWIN, Appellant. | |

APPEAL from a postjudgment order of the Superior Court for the County of Los Angeles, Michael R. Powell, Judge. Affirmed.

Pamela Rae Tripp for Appellant.

Alexander G. Goodwin, in pro. per., for Respondent.

_____

Corine C. Goodwin appeals from a postjudgment order declaring that her former husband, Alexander G. Goodwin, had the right to claim their minor child as an exemption for income tax purposes for tax years since the marital dissolution judgment.[1]  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The 2014 Stipulated Judgment*

Corine and Alexander were married in July 2009 and have a child who is now 11 years old.  In September 2012 Alexander filed a petition for dissolution of the marriage.  On February 28, 2014 the family law court (Judge Shelley Kaufman) entered a judgment of dissolution based on the parties' stipulation.

The stipulated judgment was divided into separate parts, subparts and sections.  The provisions of the second part, titled "Child Custody,"[2] included that Corine, as the parties agreed, was at the time awarded sole legal and physical custody of their child, but with Alexander having the child on specified days.

The provisions of the judgment's third part, titled "Child Support," included (at sections 3.01 and 3.02) that Alexander would pay Corine the monthly sum of $1,326 for child support, with those payments continuing until the earliest of specified circumstances, including further court order.  Although the judgment's Child Support part stated (at sections 3.07 and 3.08) that in 2013 Alexander's total monthly gross income was $7,800

---

[1]     We refer to Corine and Alexander by their first names to avoid confusion.

[2]     We have omitted all unnecessary capitalization of letters, underling and bold-face type in the judgment and any other documents quoted.

and Corine's was $0, it also provided (at section 3.04) that the court found each party had sufficient income to support the child during the parent's custodial time, with Alexander having the child 10 percent of the time and Corine having 90 percent.  It provided (at section 3.05) for the court to retain jurisdiction over the issue of child support.

Section 3.06 provided, "The Court finds that the parties are fully informed of their rights concerning child support; this is being agreed to without coercion or duress; the judgment is in the best interests of the child involved; the needs of the child will be adequately met; and the right to support has not been assigned to the county pursuant to Section 11477 of the Welfare and Institutions Code and no public assistance application is pending."

The Child Support part of the judgment contained a subpart titled "Dependency Exemptions."  The Dependency Exemptions subpart, at section 3.09, provided, "Commencing in 2013, unless otherwise agreed to by the parties, [Alexander] shall claim the minor child as an exemption for all state and federal income tax purposes every tax year and each party shall execute and deliver, on demand, any documents necessary for such claim, including IRS form 8332."

2.  *The June 21, 2016 Order and Minute Order*[3]

On June 21, 2016 the court issued an order, signed by Judge Kaufman, on a Los Angeles County Superior Court form

---

[3]     We augment the record on our own motion, pursuant to California Rules of Court, rule 8.155(a)(1)(A), to include the June 21, 2016 minute order, which was not identified in Corine's designation of record on appeal.

(FAM 024(A)), after a proceeding held on June 7, 2016.  The order had certain preprinted language crossed out and handwritten language inserted throughout it.  The box next to the preprinted language "Stipulation and Order on Order To Show Cause" was checked, with the words "Stipulation and" crossed out.  Below preprinted language that stated, "The parties agree to the following matters, which shall be the orders of the court," the form order set forth several options with boxes next to them.  Although the box for "Modification" was checked, the preprinted word "Modification" was crossed out and replaced with handwriting that, although unclear, appears to state, "FOAH" (that is, Findings and Orders After Hearing).  Immediately below the handwritten letters the preprinted form states, "The orders agreed to herein modify the prior orders and/or the judgment made in this case.  All other orders made in this case shall remain in full force and effect except as provided herein."  In a separate section titled "Notice and Opportunity To Be Heard," the order contained handwriting referring in part to "Petitioner's RFO Re: Child Support Modification, Sanctions, Restore/Make Visitation—filed [May 4, 2016]," with Alexander identified elsewhere in the order as the petitioner and Corine as the respondent.

Section 300 of the June 21, 2016 order only bore the preprinted title "Child Support Orders," with a citation to the Family Code.  Underneath that section were sections numbered in the 300's that pertained to child support.  In particular, section 302 provided both Alexander and Corine were to pay for the support of their child and set forth in handwriting the

monthly amounts of the payments.[4] Under section 303, which was titled "Basis for Child . . . Support Calculation," there was a box, which was checked, next to preprinted language that stated, "A printout of a computer calculation of the parties' financial circumstances is attached or on file herein." The statement, "Court to submit an order," was handwritten in empty spaces and extended across both sections 302 and 303.

Section 310 of the June 21, 2016 order, titled "Dependency Exemptions (Optional)," contained preprinted language that stated, "In [the] absence of any specific agreement the custodial parent is usually entitled to claim exemptions." For the provision as to which of the parties would have the right to claim the minor child as a "dependent and exemption for all state and federal income tax purposes," the box next to the word "Petitioner" and the one next to the word "Respondent" were each left unchecked. Also left unchecked was the box next to the preprinted statement, "A party required to pay child support to the other shall not make the above claims [that is, the dependency and exemption claims] for any year for which the full amount of child support has not been paid."

Section 312 contained a blank that was filled in with handwriting that stated, "Petitioner's RFO[:] 1) Request for makeup time—Denied[;] 2) Request for Sanctions—Denied[;]

---

[4] Section 302 of the June 21, 2016 order, which set forth the monthly child support amounts in handwriting, provided for monthly child support payments of $224 on "5-4-16 through 6-30-16" and $589 "effective 7-1-16."

3) Request for Child Support Modification—modified due to Petitioner's unemployment."

Section 900 bore the preprinted title "Orders Relating to Judgments Only." Section 909 contained a box, which was left unchecked, next to the preprinted language, "All prior orders made in this case shall terminate upon the filing of this agreement."

The June 21, 2016 order, at the bottom of the last page, contained a paragraph that stated in part, "I have read and agreed to each page of this document." Underneath that paragraph contained the parties' signatures, as well as the signature of Corine's attorney. Beneath those signatures were the words, "It is so ordered," followed by the date (June 21, 2016) and Judge Kaufman's signature.

Attached to the June 21, 2016 order were two documents, each titled "DissoMaster Report,"[5] that contained Corine's and Alexander's monthly financial information. On the first DissoMaster Report the phrase "effective 5-4-16 through 6-30-16" was handwritten at the top of the document with Judge Kaufman's signature below it. That first report, under the column "Input Data," indicated Alexander had wages and salary in the monthly amount of $0 and Corine in the monthly amount of $1,844. The second DissoMaster Report had the phrase "effective 7-1-16" handwritten at the top with Judge Kaufman's signature below it. That second report, under the Input Data

---

[5] "'The DissoMaster is one of two privately developed computer programs used to calculate guideline child support as required by [Family Code] section 4055, which involves, literally, an algebraic formula.'" (*In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 34, fn. 2.)

6

column, indicated Alexander had wages and salary in the monthly amount of $1,733 and Corine in the monthly amount of $1,844. Both reports, under the Input Data column and in the row for the number of federal exemptions, had the number one ("1") for Alexander and the number two ("2") for Corine.

On June 21, 2016 the court entered a minute order containing the heading "Ruling on Submitted Matter: Child Support and Determination of Arrears." According to that minute order, the court heard argument on the issue of child support; took the matter under submission; and, after further review of any moving and opposing papers and consideration of the parties' testimony and argument, "now rules as follows on the submitted matter: [¶] Effective May 4, 2016 through June 30, 2016, the father/Petitioner shall pay to the mother/Petitioner the monthly amount of $224.00 as support for the minor child. . . . [¶] Effective July 1, 2016, the father/Petitioner shall pay to the mother/Petitioner the monthly amount of $589.00 as support for the minor child. [¶] These orders are incorporated into the Order on Order to Show Cause, which was signed by the parties on June 7, 2016. [¶] The Court signs this date the Order on Order to Show Cause." The June 21, 2016 minute order did not mention or attach any DissoMaster reports, nor did it mention the dependency exemption.

3. *The May 9, 2017 Order*

On May 9, 2017 Judge Kaufman signed a Findings and Order After Hearing on Judicial Council form FL-340, which was filed that same date after a proceeding held on April 4, 2017. Under the preprinted language "The Court Orders," the box next to the preprinted language "As attached" was checked. As explained in a document titled "Attachment to Findings and

Order After Hearing" (2017 Attachment) that was attached to the May 9, 2017 order, Corine had filed a request for order for child support, visitation and attorney fees on December 20, 2016, which was heard on April 4, 2017; and the court—after having reviewed the case file, the moving papers and the parties' declarations and having heard from the parties and their counsel—granted Corine's request to modify child support. The court in the 2017 Attachment explained it proceeded with the modification of child support payments because Alexander was working full-time, his new monthly income was $8,333, his custodial time was 10 percent and modification was in the best interest of the child. The court ordered Alexander to pay Corine child support in the monthly amount of $1,432 commencing April 1, 2017. The court also explained it granted Corine's request despite her failure to file a complete income and expense declaration with attached paystubs but it denied retroactivity of child support payments because of that failure. Neither the May 9, 2017 order nor the 2017 Attachment made any reference to the dependency exemption.

Separately attached to the May 9, 2017 order, behind the 2017 Attachment, was a DissoMaster Report. That report, under the Input Data column, indicated Alexander had wages and salary in the monthly amount of $8,333 and Corine in the monthly amount of $3,263 and, in the row for the number of federal exemptions under that same column, again had Alexander with one exemption and Corine with two.

4. *Alexander's 2019 Request for Order and Corine's Response*

On April 15, 2019 Alexander filed a form request for an order of change in child custody, visitation, child support and

other orders, requesting a change from the then-current order for child support filed in 2017 to accommodate a change in his employment circumstances. In a declaration dated November 1, 2020 that was later attached to his form request,[6] Alexander stated his filing had been repeatedly delayed because the Orange County Social Services Agency had commenced a dependency case in 2019. Although the Orange County juvenile court had ruled in his favor and doubled his custody/visitation time from 10 percent to 20 percent, final exit orders regarding custody had not yet been issued by the juvenile court, which maintained its jurisdiction. He also averred his unemployment income had been garnished and given to Corine.

Other documents were later attached to Alexander's form request for order, including an unsigned and undated copy of Alexander's 2019 tax return indicating he had not claimed the child as a dependent on that return, and a separate income and expense declaration. Alexander's income and expense declaration, among other information, stated he had been laid off

---

[6] Although Alexander's April 15, 2019 request for order referred to an attached declaration, no declaration or other attachment was included with the request as originally filed on that date. In Corine's December 4, 2020 responsive declaration to Alexander's request for order, she averred Alexander had later provided her attorney with a copy of the request that included missing attachments. She submitted as an exhibit a copy of Alexander's complete request that included his November 1, 2020 declaration (Judicial Council form MC-031), as well as his separate form income and expense declaration (Judicial Council form FL-150) and other attachments.

due to the COVID-19 pandemic because his employer was a river cruise line catering to senior citizens.

On December 4, 2020 Corine filed a responsive declaration to Alexander's request for order. She stated her consent to guideline child support based on Alexander's and her incomes from unemployment.

5. *The December 18, 2020 Hearing on Alexander's 2019 Request for Order and the Parties' Additional Briefing*

According to a minute order dated December 18, 2020,[7] the court (Judge Michael R. Powell) heard Alexander's request for order on that date, with Alexander, Corine and Corine's attorney present. Alexander testified. The court continued the hearing to February 26, 2021. It also ordered Alexander to pay Corine child support in the monthly sum of $333; the parties not to file taxes until the court made its determination; the parties to provide the court certain documents; and Corine to prepare the written order after the December 18, 2020 hearing for Alexander's approval and the court's signature. According to the subsequent court-signed order filed on February 5, 2021, the court on December 18, 2020 had ordered Alexander to provide "a copy of the transcript from Judge Kaufman" and Corine's counsel to provide "a copy of the Order made by Judge Kaufman." (The February 5, 2021

---

[7] Corine had not designated for inclusion in the appellate record—and the appellate record did not include—any reporter's transcript, or agreed or settled statement as to, the December 18, 2020 hearing.

10

order provided no further details about the transcript or Judge Kaufman's order to be provided to the court.)

On February 16, 2021 Corine filed a memorandum of points and authorities in opposition to Alexander's 2019 request for order. According to Corine, Alexander at the December 18, 2020 hearing had argued the 2014 stipulated judgment entitled him to the dependency exemption and accompanying child tax credits. She disagreed, asserting that she, as the child's primary custodial parent, was entitled to the exemption and tax credits and that the 2014 stipulated judgment had been issued at a time when she was unemployed and would not have benefitted from the exemption. Submitting copies of the June 21, 2016 order (exhibit A) and the May 9, 2017 order (exhibit B), together with their attachments, Corine argued Judge Kaufman at the June 7, 2016 and April 4, 2017 hearings had awarded the child tax credits to Corine and the DissoMaster reports attached to Judge Kaufman's 2016 and 2017 orders reflected those awards.

Corine further contended federal tax law required the court to award her the dependency exemption. In support of that contention she attached as an exhibit printouts dated February 11, 2021 of pages from the frequently asked questions section of the Internal Revenue Service (IRS) website (www.irs.gov). Those printouts, among other matters, indicated a child may be claimed as a dependent of the noncustodial parent upon compliance with a special rule for children of parents who are divorced, separated or live apart, which in part requires the custodial parent (the parent with whom the child lived for the longer period of time during the year) to sign IRS form 8332 ("Release/Revocation of Release of Claim to Exemption for Child by Custodial Parent") or a substantially similar statement.

11

Corine argued that, although under federal law the custodial parent may release the right to claim a dependency exemption to the noncustodial parent, she was the primary custodial parent entitled to the dependency exemption and was not willing to release that exemption to Alexander.

On February 25, 2021 Alexander filed points and authorities in support of his request for order. He stated the dependency exemption and accompanying tax credits had been offered to him by Corine in fair exchange for significant consideration provided in the divorce agreement (that is, the 2014 stipulated judgment). Attaching a copy of the 2014 stipulated judgment, Alexander referred the court to section 3.09 (under the Dependency Exemptions subpart of the Child Support part) of the judgment; emphasized section 3.09 provided he was to claim the child as an exemption for all state and federal income tax purposes for every tax year unless the parties agreed otherwise; and also quoted section 3.09's provision that each party shall execute and deliver any documents, including IRS form 8332, necessary for the exemption claim. He asserted Corine had never asked the court to modify the 2014 stipulated judgment's provision regarding the dependency exemption, as shown (he argued) by "the attached transcript . . . and the associated minute order" confirming the court had made no changes to the 2014 stipulated judgment's dependency exemption provision.[8]

---

[8] No transcript was attached to the copy of Alexander's February 25, 2021 points and authorities that was included in the appellate record. At the subsequent February 26, 2021 continued hearing on Alexander's 2019 request for order, however, Corine's attorney stated Alexander had provided the

12

6. *The Continued Hearing on Alexander's 2019 Request for Order and the Court's February 26, 2021 Order*

At the February 26, 2021 continued hearing on Alexander's request for order, Alexander, Corine and Corine's attorney were again present.  Alexander, among other matters, told the court the dependency exemption was a key piece of the divorce agreement; he had given up a significant amount in assets, including the house; and he would have negotiated the agreement differently if he had not received the dependency exemption as Corine had agreed.  He said Corine and her attorney since that agreement had never once filed a request for order or otherwise asked the court to change who received the exemption, nor did they ever inform him of their belief the agreement regarding the exemption had been changed.  He stated there was thus no reason for him to have understood that was somehow Corine's belief until his tax returns were rejected by the IRS.  It took him a long time to discover that his tax returns were being rejected on the ground someone else had been claiming the child dependency exemption.  When he reached out to Corine, she and her attorney eventually told Alexander their position that information on the

transcript for the hearing for exhibit A (the June 21, 2016 order) of Corine's points and authorities—that is, the transcript of the June 7, 2016 hearing before Judge Kaufman.   Corine in her appellate opening brief acknowledges a copy of the full transcript of the June 7, 2016 proceeding had been provided to the court for the February 26, 2021 hearing.  We augment the record on our own motion, pursuant to California Rules of Court, rule 8.155(a)(1)(B), to include the reporter's transcript of the June 7, 2016 hearing, which was not identified in Corine's designation of record on appeal and which Corine had earlier unsuccessfully attempted to lodge with this court.

DissoMaster reports showed the court had changed the judgment. Reiterating that Corine and her attorney had in the past neither asked the court to change nor informed Alexander the court had changed the agreement regarding the exemption, Alexander expressed his concern that it was too late for him to get back all the things he had given up in the agreement.

Corine told the court Alexander had never paid child support and was $32,000 in arrears for the past year. She stated her belief she should receive the child tax credit to account for Alexander's lack of financial support. In response Alexander told the court that, as he had explained to Corine and her attorney, once he was able to claim the tax credit he would be due $28,000—the amount attributable to the difference between his having or not having the dependency credit for prior years—which the IRS would garnish and send directly to Corine. He stated he had already prepared tax returns that correctly reflected his status, with any refund to be paid directly to Corine.

After hearing the arguments of Corine's attorney the court that same day indicated it would order that Alexander had the exemption for tax years since the judgment. The court stated its intent to make additional orders with Corine's counsel to prepare for its signature an "Order After Hearing" that was consistent with those orders. The court stated the order after hearing "is going to be as follows," proceeded to describe what should be the contents of the order after hearing, and instructed the order after hearing to include its DissoMaster Report, which the court filed the same day. It also stated that, after Corine's attorney served the order after hearing, the parties were to meet and confer regarding any inaccuracies in the attached DissoMaster Report, with the court to determine if any corrections were necessary or if

14

further hearing would be required in the event of any discrepancy.

On April 9, 2021 the court filed its signed Findings and Orders After Hearing (collectively the April 9, 2021 order[9]) for the February 26, 2021 proceeding. The April 9, 2021 order stated the court ordered Alexander "has exemption for tax years since the Judgment entered on this case." It also ordered, among other matters, any tax refund received by Alexander be immediately applied toward arrears in the entire amount; the procedure by which any refund would be handled, such as requiring (with a specified exception) Alexander to forward the funds to Corine within one week of receipt; and Alexander to pay child support in the monthly sum of $435 commencing February 1, 2021. Attached to the April 9, 2021 order was the court's DissoMaster Report, which showed Alexander having two federal exemptions, some income and some tax liability.

Corine timely appeals.[10]

## DISCUSSION

Challenging only the portion of the 2021 order providing Alexander has the dependency tax exemption for all tax years

---

[9]     We augment the record on our own motion, pursuant to California Rules of Court, rule 8.155(a)(1)(A), to include the April 9, 2021 order, including the attached DissoMaster Report, neither of which was identified in Corine's designation of record on appeal.

[10]     Although Corine appealed from an unsigned February 26, 2021 minute order, rather than the formal, signed order entered on April 9, 2021, we treat her April 21, 2021 notice of appeal as being from the April 9 order. (See, e.g., *Collins v. City & County of San Francisco* (1952) 112 Cal.App.2d 719, 723 ["although the

15

since entry of the 2014 judgment, Corine contends the family law court committed reversible error in modifying the June 21, 2016 order, which, she asserts, had granted the dependency tax exemption to her.  Specifically, Corine argues there was no substantial evidence to support Judge Powell's modification of Judge Kaufman's 2016 order regarding the dependency exemption by ordering Alexander had the exemption since the 2014 judgment.  Judge Powell's comments at the February 26, 2021 hearing, Corine contends, indicate the court had not even reviewed the 2016 order and thus had improperly ignored it.  Relying on *Curtin v. Koskey* (1991) 231 Cal.App.3d 873 (*Curtin*) and similar authorities, she also somewhat inconsistently argues Judge Powell improperly reconsidered and overruled Judge Kaufman's 2016 order.  (See *id.* at p. 876 ["one trial court judge may not reconsider and overrule a ruling of another judge"]; see also *People v. Barros* (2012) 209 Cal.App.4th 1581, 1597-1598 ["'[f]or one superior court judge, no matter how well intended, even if correct as a matter of law, to nullify a duly made, erroneous ruling of another superior court judge places the second judge in the role of a one-judge appellate court'"].)

There was no reversible error.  As the record shows, the parties disputed whether Judge Kaufman, subsequent to the

---

notice of appeal incorrectly describes the judgment as a 'minute order,' and erroneously gives the date of the minute order rather than the date of the judgment, we will treat the appeal as being from the appealable judgment"]; see also *Walker v. Los Angeles County Metropolitan Transit Authority* (2005) 35 Cal.4th 15, 18 [when it is reasonably clear what appellant was trying to appeal and no prejudice would accrue to respondent, the notice of appeal should be treated as an appeal from the operative judgment or order].)

2014 judgment, ordered that Corine had the right to claim the exemption. Alexander by his request for an order sought to clarify whether the 2014 judgment's dependency exemption provision had been modified. This required, Corine had contended in the family law court, a review of the 2016 and 2017 child support orders in the case. She points to nothing in the record showing Judge Powell did not do just that.

To be sure, as Corine emphasizes, Judge Powell stated at the February 26, 2021 hearing that he could not locate a DissoMaster report when he heard the parties' arguments: "The issue with the DissoMaster report, counsel, I don't know which one—because I was looking at two of them, but both of them have Shelly Kaufman's name on them. One was from 2015 and another from '17. I can't find the one that you were talking about." Those statements, however, at most, indicate Judge Powell had difficulty locating the 2016 DissoMaster reports during the February 26, 2021 hearing, not that he had never read or considered them or Judge Kaufman's 2016 order to which the 2016 reports had been attached. Absent clear indication to the contrary, we presume the court properly reviewed and considered all the parties' relevant papers and evidence.[11]

---

[11] The trial court's order "'is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; see *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)

17

Moreover, Corine's attorney at the hearing had referred to only three DissoMaster reports, all of which had been attached to Corine's February 16, 2021 points and authorities—the two sets of DissoMaster reports attached to the 2016 order and the DissoMaster report attached to the 2017 order. All three reports had Shelly Kaufman's name and had the inaccurate caption, "DissoMaster Report [¶] 2015, Monthly" at the top. The 2016 reports were part of exhibit A of Corine's points and authorities and the 2017 report was part of exhibit B. There is no indication in the record that any other DissoMaster report, including one prepared in 2015, had ever been submitted to Judge Powell for the hearing, assuming a 2015 report even existed.[12] Because Judge Powell stated he was looking at two reports, it is entirely reasonable to infer Judge Powell, even at the hearing, did in fact have at least one of the 2016 reports before him and he had referred to it as the 2015 report, given its caption. In any event, Corine's attorney at the hearing summarized the relevant contents of the 2016 DissoMaster reports—specifically, that they showed Corine with two exemptions—and the record does not indicate Judge Powell disbelieved that summary.

Finally, and most importantly, Corine fails to establish that Judge Kaufman's 2016 order granted the dependency exemption to Corine and thus that Judge Powell, by clarifying Alexander

---

[12]     Setting aside the 2016 and 2017 DissoMaster reports bearing the inaccurate caption "DissoMaster Report [¶] 2015, Monthly," the record does not contain any 2015 DissoMaster report. Indeed, at the June 7, 2016 hearing before Judge Kaufman, it was undisputed by the parties that the then-most recent order of child support was the 2014 judgment and that the judgment had not since been modified.

had the exemption since the judgment, made an order modifying or conflicting with Judge Kaufman's order.  (See *Kinda v. Carpenter* (2016) 247 Cal.App.4th 1268, 1278-1279 [distinguishing *Curtin*, *supra*, 231 Cal.App.3d 873 on the ground in *Curtin* "the later ruling imposed a course of action in direct conflict with the earlier ruling"].)  As Alexander points out, the 2014 judgment provided he was to claim the dependency exemption absent agreement by the parties otherwise.  At the June 7, 2016 hearing on Alexander's request for modification of the child support amount, Judge Kaufman asked what was the last child support order, and Alexander responded that the 2014 judgment constituted the most recent child support order and had not been modified, a response that neither Corine nor her attorney disputed.  Judge Kaufman later at that same hearing stated, "I'm going to make an order regarding child support.  And I'll do that and you will get a minute order responding to what it will be."  Corine's attorney told Judge Kaufman, "So we have the Findings and Order After Hearing done.  It's signed, but we checked off the child support and it's blank."  Judge Kaufman replied, "Just put, 'Court to send minute order.'"

As discussed, Judge Kaufman's subsequent (June 21st) minute order made no mention of the dependency exemption, let alone that the court was modifying the 2014 judgment's dependency exemption provision by granting Corine, rather than Alexander, the right to claim the exemption.  Although the minute order was incorporated into the June 2016 "Order on Order To Show Cause," which the minute order stated had been signed by the parties on June 7, the dependency exemptions provision (section 310) of that signed order had similarly left unchecked the box that would have granted Corine the

19

dependency exemption.  Accordingly, Judge Kaufman had not in June 2016 ordered, and the parties had not agreed, Corine was entitled to claim the exemption.  Indeed, Corine does not point to, nor are we aware of, anything in the record showing the parties had ever, prior to issuance of the June 21, 2016 order and minute order, discussed, either between themselves or with Judge Kaufman, modifying the judgment by awarding the exemption to Corine.  Similarly, the record does not show Judge Kaufman had ever intended to do so.

Corine argues Judge Kaufman, by inputting "2" rather than "1" for the number of Corine's exemptions in the 2016 DissoMaster reports, had nevertheless implicitly granted Corine the dependency exemption.  However, Corine's argument, at most, indicates that Judge Kaufman may have erred in calculating the amount of child support (section 303 of the signed 2016 order) by inputting two as the number of exemptions for Corine, a possible error that Corine had never challenged, not that the court had ordered the dependency exemption provision of the judgment modified to have Corine claim the exemption.

## DISPOSITION

The postjudgment order is affirmed.  Alexander is to recover his costs on appeal.


PERLUSS, P. J.

We concur:


SEGAL, J.              FEUER, J.


20