Filed 11/17/15  Levi Strauss & Co. v. Super. Ct. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LEVI STRAUSS & Co.,<br><br>      Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CITY &<br>COUNTY OF SAN FRANCISCO,<br><br>      Respondent;<br><br>DELOITTE CONSULTING LLP,<br><br>      Real Party in Interest. | A144889<br><br>(City & County of San Francisco<br> Super. Ct. Nos. CGC-09-487219,<br> CGC 09-487220) |

Petitioner Levi Strauss & Co. (Levi) has filed a petition seeking review of a February 25, 2015, order, in which the respondent court imposed both evidentiary and monetary sanctions for petitioner's failure to comply with a document request propounded by real party in interest Deloitte Consulting LLP (Deloitte), and for Levi's "pattern of conduct set forth at the hearing on this matter on February 2, 2015 and the additional oral argument on February 10, 2015."  We conclude the respondent court did not abuse its discretion in imposing both evidentiary and monetary sanctions for Levi's misuse of the discovery process.  Accordingly, we deny the petition for a writ of mandate.

## FACTS

### A.      Consolidated Complaints

In 2009, Levi filed this lawsuit based on Deloitte's allegedly fraudulent and failed implementation of German software maker SAP's Apparel and Footwear Solution software system for Levi's U.S. division.  The complaint specifically alleges "a myriad of complicated and technical claims" relating to the installation of the SAP computer software program by "more than 200 individuals over a period of nearly two years." According to Levi, Deloitte's failure to properly implement the SAP software system nearly put the company out of business because during a ten-month period Levi was unable to fill customer orders on a timely basis.  Levi claims the software failure caused it to lose more than $80 million, including $62.2 million in lost profits.  Deloitte filed a separate complaint against Levi for breach of contract relating to unpaid fees in excess of $7 million due on their contract with Levi.  The cases were consolidated in the respondent court.

### B.      Discovery Proceedings

In response to Deloitte's interrogatories, Levi disclosed that its expert would use an "internal 'fill-rate' " of customer orders to compute Levi's alleged lost profits of $62.2 million.  The calculation required, in pertinent part, an evaluation of orders that were cancelled during the time period when damages were allegedly incurred by Levi (hereafter referred to as order cancellations).  In June 2013, Deloitte served a document request (Request No. 19), seeking "ALL reports, correspondence AND other DOCUMENTS discussing the order cancellations that are subject of the fill-rate calculations, . . . INCLUDING the reasons for AND causes of such cancellations."  The document request defined the term "DOCUMENTS" to include "computer electronic mail," "information retrievable from computers," and "electronically stored information."

In its initial response to Request No. 19, Levi stated it had produced "a narrow category of documents" and "certain ship risk reports from August 2008 through May 2009 located after a diligent search," and it had not been able to identify any additional documents responsive to the request.  In a reply letter sent in January 2014, Deloitte

informed Levi that Request No. 19 sought, in pertinent part, all "emails prepared or received by the Levi personnel who were responsible for Levi's relationships with the Fill Rate Customers during the time period relevant to Levi's $63 million damage claim." Levi did not produce any further documents. And, as we now discuss, during the ensuing 11 months, the parties litigated Levi's response to Request No. 19.

In March 2014, Deloitte moved to compel Levi to produce documents responsive to Request No. 19. In support of its motion, Deloitte asserted that by its request it was seeking the "source" documents related to order cancellations as the documents produced by Levi did not show which orders were cancelled or whether any cancellation was the result of an alleged problem with the SAP system or for other reasons. The document request was based on the deposition testimony of Levi's former president Robert John Anderson, who confirmed that personnel in either the sales department or the production planning department would analyze the reasons for cancelled orders and that personnel, in writing, would follow up with a customer as to why there was a cancellation. Deloitte further noted that by virtue of prior court orders, Levi had restored all of its emails from backup tapes from January 2007 through at least April 2009, which included the entire damage period used in its fill rate calculations (March 1, 2008 – December 31, 2008). Thus, according to Deloitte, it would impose no undue burden for Levi to search for emails and other documents responsive to Request No. 19. Levi opposed the motion to compel, arguing that it had discharged its obligation by providing "the data reflecting all cancelled orders, reasons for cancellation, and weekly shipping reports for the entire damages period."

In a May 21, 2014 order, the respondent court confirmed a discovery referee's report as its order, and granted Deloitte's motion to compel. The referee's report described Request No. 19, as seeking "documents regarding [Levi's] claim for lost profits based on an internal 'fill rate' metric regarding cancelled orders," and further noted that Levi had responded by producing "an excel spreadsheet, setting forth data extracted from [Levi's electronic] data warehouse, containing millions of rows of data reflecting orders and cancelled orders during the period in question. [Levi] has also produced weekly

3

shipment reports that were created following the Project 'go-live.' " The court gave Levi two choices: Levi could either (1) "search its CRM records, if any, and documents maintained by its sales and marketing personnel related to customer cancellations and shall produce any documents contained either in its CRM records or by its sales and marketing personnel that discuss the order cancellations that are the subject of the fill[-]rate calculations . . . including the reasons for and causes of such cancellations;" or (2) verify that, "from 2008 through 11/30/11," it did not use CRM software nor maintain CRM records and that its sales and marketing personnel did not maintain records or documentation related to customer cancellations, and that it "has produced all responsive documents related to the fill-rate calculations at issue." In response to the May 21, 2014 order, Levi produced no further documents and submitted several declarations purportedly in compliance with the order confirming that there were no further documents to be produced. On June 5, 2014, Deloitte sent a letter to Levi, itemizing the deficiencies in the declarations and requesting compliance with the May 21, 2014 order, but Levi never responded.

On June 20, 2014, Deloitte filed a second motion to compel and sought monetary sanctions, arguing that Levi's declarations did not comply with the May 21, 2014 order, which was opposed by Levi. On August 6, 2014, at a case management conference, the respondent court tentatively granted the motion to compel after finding that Levi had not complied with the May 21, 2014 order. The court imposed a monetary sanction of $8,122, payable by Levi's counsel, and Levi was again ordered to comply with the May 21, 2014 order. The court further indicated that if counsel paid the sanctions by close of business on August 13, 2014, and filed declarations in compliance with the May 21, 2014 order by end of business on August 15, 2014, the court would enter an order dismissing the motion to compel as moot. Levi's counsel paid the monetary sanction and Levi again filed declarations purportedly in compliance with the May 21, 2014 order. Specifically, Levi submitted the declaration of Senior Vice President for Sales Mary Ann Shannon, who averred that during the period of January 1, 2008 through November 30, 2011, Levi's sales personnel "did not maintain any records or

4

documentation related to customer cancellations, other than the information contained in [Levi's] electronic 'data warehouse," and that Levi maintained "a single electronic repository of information with respect to all customer orders and cancellations, referred to as the 'data warehouse.' "

At a September 17, 2014, case management conference, the respondent court sua sponte expressed incredulity at Levi's position that, save for the record of order cancellations in Levi's electronic "data warehouse," Levi had "absolutely no documents" responsive to Request No. 19 relating to order cancellations. In response to counsel's claim regarding the production of emails, the court explained that Levi was not required to produce "emails that were not maintained in any organized fashion, but rather just came and went, there is absolutely no analyses of customer cancellations, no gathering of information . . . to understand or to look at, no strategic plans as to what to do about this and the like; nothing other than [an] email that might pop up here or there." But, the respondent court went on to say that Levi was expected to produce "a common business record" in the form of "emails . . . analyzing cancellations from customers." The court allowed Levi the option of producing the type of electronic documents described by the court or producing a witness to testify at a deposition that Levi had no such documents. In response, on October 10, 2014, Levi produced 112,835 pages of "order management reports and monthly shipping demand information," which again was a compilation of "data" from its electronic "data warehouse." Levi wrote to the respondent court, asking if it was necessary to produce Shannon or any other witness for a deposition in light of Levi's additional document production. The respondent court reconfirmed that Shannon's deposition was to be taken, which was ultimately held over the course of two days, October 29, 2014 and December 10, 2014. During her deposition, Shannon testified, in pertinent part, that by her declaration she did not mean to convey that Levi sales personnel did not receive documents relating to order cancellations. She identified several emails, which were addressed to her and other sales personnel, and included discussions relating to order cancellations during the relevant time period used for the

5

fill-rate damage calculation.[1]  Shannon did not recall receiving the emails, but she did not dispute their existence.  Following Shannon's depositions, Levi produced no further documents.

Based in pertinent part on Shannon's deposition testimony, on December 23, 2014, Deloitte filed its third motion to compel seeking redress for Levi's failure to produce documents responsive to Request No. 19, and for noncompliance with the respondent court's order of May 21, 2014, and its August 6, 2014, tentative ruling.  Specifically, Deloitte asked the court to:  (1) strike Levi's lost profits claim as an issue preclusion sanction; (2) award monetary sanctions for attorney fees ($87,808) and costs ($4,270); and (3) issue an order based on its August 6, 2014, tentative ruling.  In support of this motion, Deloitte argued that both its Request No. 19 and the May 21, 2014 order required Levi to produce all "records or documentation" relating to order cancellations, and did not exclude emails, email attachments, Word, Excel or PDF documents; and Levi had failed to produce such responsive documents even though at her deposition Shannon conceded the existence of electronically stored documents responsive to Request No. 19.  Levi opposed the motion to compel, arguing, in pertinent part, it had complied with Request No. 19 by producing documents relevant to its claim for lost profits, and "it was always understood and contemplated that there would be communications" within Levi's sales group, and between the Sales Group and Levi's customers, regarding order cancellations, "but that, as the Court confirmed, the Order does not call for 'e-mails that were not maintained in any organized fashion.' "

Following consideration of the parties' papers and extensive argument by counsel on February 2, 2015 and February 10, 2015, covering more than 100 pages of the reporter's transcript, the respondent court granted Deloitte's motion to compel by an order filed on February 25, 2015.  Based on Levi's failure to comply with Request No. 19, and its "pattern of conduct set forth at the hearing on this matter on February 2,

---

[1]  These emails had been found by Deloitte while reviewing Levi's earlier responses to other requests for documents that did not concern sales personnel.

2015 and the additional oral argument on February 10, 2015," the respondent court imposed the following sanctions: (a) "an evidentiary sanction" that Levi "be prohibited from introducing at trial evidence of damages proximately caused by cancelled orders;" and (b) "a monetary sanction" directing Levi to pay Deloitte the sum of $36,589 for attorney fees incurred by Deloitte.

On April 27, 2015, Levi filed its petition for mandate in this court, challenging the respondent court's imposition of evidentiary and monetary sanctions.[2] We requested informal opposition and gave notice, pursuant to *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180, that, we might choose to act by issuing a peremptory writ in the first instance. As we now explain, we conclude the respondent court appropriately imposed evidentiary and monetary sanctions for Levi's misuse of the discovery process.

## DISCUSSION

Code of Civil Procedure section 2023.010[3] describes a number of circumstances. which constitute "misuses of the discovery process," including "[f]ailing to respond or submit to an authorized method of discovery," "[m]aking an evasive response to discovery," "[d]isobeying a court order to provide discovery," and "opposing, unsuccessfully and without substantial justification, a motion to compel . . . discovery." (*Id.*, subds. (d), (f), (g), (h).) And, as recognized by our Supreme Court, "The sanctions under Code of Civil Procedure section 2023 are potent. They include monetary sanctions, contempt sanctions, issue sanctions ordering that designated facts be taken as established or precluding the offending party from supporting or opposing designated claims or defenses, evidence sanctions prohibiting the offending party from introducing designated matters into evidence, and terminating sanctions that include striking part or all of the pleadings, dismissing part or all of the action, or granting a default judgment

---

[2]     Petitioner has also filed a related appeal challenging only the monetary sanction. However, petitioner asks us to consider both sanctions in our review of its writ petition. We agree with petitioner that in the interest of judicial economy and expediency, our consideration of both sanctions is appropriate on this writ review.

[3]     All further unspecified statutory references are to the Code of Civil Procedure.

against the offending party." (*Cedars–Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 12.)

" 'In choosing among its various options for imposing a discovery sanction, a trial court exercises discretion, subject to reversal only for manifest abuse exceeding the bounds of reason. [Citation.] . . .' (*Kuhns v. State of California* (1992) 8 Cal.App.4th 982, 988 [10 Cal.Rptr.2d 773]; see also *Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1545 [51 Cal.Rptr.2d 311] [discovery sanctions reversible only for arbitrary, capricious, or whimsical action]; *Obregon v. Superior Court* (1998) 67 Cal.App.4th 424, 431-432 [79 Cal.Rptr.2d 62] [complaining party must show how and why court's action constituted abuse of discretion].)" (*Juarez v. Boy Scouts of America, Inc.* (2000) 81 Cal.App.4th 377, 388-389 (*Juarez*).) Thus, "the question before us is not whether the [respondent] court should have imposed a lesser sanction but rather 'whether the [respondent] court abused its discretion by imposing the sanction it chose. [Citation.]' [Citation.]" (*Vallbona v. Springer, supra*, 43 Cal.App.4th at p. 1546.) We see no abuse of discretion in this case.

A fair reading of the voluminous record indicates that starting from Deloitte's first motion to compel a response to Request No. 19, the respondent court gave Levi repeated opportunities to comply by either producing responsive source documents, or certifying that no such source documents existed relating to order cancellations. Both Request No. 19, and the respondent court's extensive discussion with counsel at the September 17, 2014 case management conference, explicitly informed Levi that a proper response required it to produce certain computer electronic mail, information retrievable from computers, and electronically stored information. Additionally, Shannon's deposition testimony demonstrated that such computer electronic mail, information retrievable from computers and electronically stored information, existed but had not been produced by Levi. Thus, on this record we conclude the respondent court acted well within its discretion at the February 2015 hearings when it rejected Levi's explanations for its failure to produce available computer electronic mail, information retrievable from

8

computers and electronically stored information documents responsive to Request No. 19.

Additionally, the record reflects that the respondent court "was fully justified in concluding that [Levi] deliberately engaged in uncooperative and obstructive tactics in resisting [Deloitte's] legitimate efforts to unearth the facts supporting" Levi's theory of lost profits. (*Juarez, supra*, 81 Cal.App.4th at p. 390.) Levi argues that it effectively responded to Request No. 19 by producing all the "information" to support its theory of lost profits "through an extract" of its "data warehouse" - an electronic database of customer orders. However, Deloitte was entitled to refute Levi's claim that the "information" in its electronic "data warehouse" was an accurate representation of fact. To that end, Deloitte was not limited to the production of only documents deemed "relevant" as defined by Levi. Rather, as the respondent court found, Deloitte was entitled to, and its Request No. 19 required, that Levi produce "ALL reports, correspondence AND other DOCUMENTS," discussing the reasons and causes of the order cancellations, including responsive computer electronic mail, information retrievable from computers, and electronically stored information. " 'An important aspect of legitimate discovery from a defendant's point of view is the ascertainment, in advance of trial, of the specific components of plaintiff's case so that appropriate preparations can be made to meet them. It is impossible to discover this other than from the plaintiff.' (*Karz v. Karl* (1982) 137 Cal.App.3d 637, 650 [187 Cal. Rptr. 183].)" (*Juarez, supra*, 81 Cal.App.4th at p. 389.)

"Absent some unusual extenuating circumstances not present here, the appropriate sanction when a party repeatedly and willfully fails to provide certain evidence to the opposing party as required by discovery rules is preclusion of that evidence from the trial – even if such a sanction proves determinative in terminating plaintiff's case. (See cases discussed in *Karz v. Karl, supra*, 137 Cal.App.3d at pp. 648-649 [upholding sanctions precluding plaintiff from proving essential elements of his causes of action after plaintiff failed to comply with an order compelling him to provide further answers to interrogatories].) 'The *ratio decidendi* behind such cases,' a court has stated, is 'that a

9

persistent refusal to comply with an order for the production of evidence is tantamount to an admission that the disobedient party really has no meritorious claim . . . .' (*Kahn v. Kahn* (1977) 68 Cal.App.3d 372, 378 [137 Cal. Rptr. 332].)" (*Juarez, supra*, 81 Cal.App.4th at p. 390; see *id.* at p. 389 [trial court did not abuse its discretion in imposing evidentiary sanctions under section 2023 where plaintiff had repeatedly provided nonresponsive and evasive answers to interrogatories].)

We also see no abuse of discretion in the respondent court's imposition of a monetary sanction in the nature of an award of attorney fees. "Under section 2034, subdivision (a), a party serving a request for production of documents may seek a court order for compliance with the request where the party served has refused or failed to produce such documents. If the court finds the refusal or failure was without substantial justification, it may require that party to pay to the requesting party the amount of reasonable expenses incurred in obtaining the order, including reasonable attorney's fees. Attorney's fees and expenses may be awarded when a motion to compel is granted; the sanctioned party need not have refused to obey an existing court order. (See *Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 789 [149 Cal. Rptr. 499].)" (*Sauer v. Superior Court* (1987) 195 Cal.App.3d 213, 224.)

## DISPOSITION

The petition for writ of mandate is denied.  Real Party in Interest Deloitte Consulting LLP shall recover its costs in this proceeding.

_____
Jenkins, J.


We concur:


_____
Pollak, Acting P. J.


_____
Siggins, J.


*Levi Strauss & Co. v. Superior Court,* A144889

11